United States Court of Appeals,

Eleventh Circuit.

Nos. 95-3591, 95-3616.

UNITED STATES of America, Plaintiff-Appellee,

v.

Larry D. BARNETTE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Larry D. BARNETTE, Defendant,

Kathleen C. Barnette, Movant-Appellant.

Nov. 20, 1997.

Appeals from the United States District Court for the Middle District of Florida. (No. 83-131-CR-J-16), John H. Moore, II, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and HENDERSON, Senior Circuit Judges.

EDMONDSON, Circuit Judge:

This case is a consolidated appeal of a civil contempt order issued against Appellants for failure to abide by a court order to enforce a previously entered forfeiture judgment against one of them. The government has filed a motion to dismiss the appeal. Pursuant to the fugitive disentitlement doctrine, we grant that motion.

*Background*

Defendant-appellant Larry Barnette was convicted in 1984 on criminal charges not at issue in this appeal. That conviction resulted in a special verdict of forfeiture requiring Mr. Barnette to forfeit specific shares of stock owned by him. Unknown to the government, Mr. Barnette had, two

weeks before his indictment, allegedly transferred these shares[1] to his then wife, Kathleen Barnette.[2]

A portion of the forfeiture judgment was paid by Mr. Barnette; but for the eleven years following the original forfeiture judgment, the government made many attempts, through court orders, to collect the unpaid portion of the judgment. One of the attempts was an application for enforcement filed by the government in 1987. Both Appellants were properly served with notice of this action. A ruling was never made on this application, however.

In 1991 the district court entered an order finding that Larry Barnette had not satisfied the 1984 forfeiture judgment and that he remained obligated on the unpaid portion, despite the purported transfer of the stock to his wife. The basis for this decision was that the government's interest in these shares vested upon the last offense for which Barnette was convicted and, thus, the stock transfer was of no effect. At this point in the proceedings, the district court judge recognized that a value needed to be placed on the shares to determine when the judgment would be satisfied.

Discovery requests and production orders were served on both of the Barnettes for records needed to value the stock. In 1992, when neither Appellant complied[3] the government filed a civil contempt petition against Mr. Barnette. A second petition was filed in June 1994 seeking a contempt judgment against both Appellants. Kathleen Barnette was served through her counsel, and

---

[1]Although the Barnettes claim the stock was transferred on 19 August 1983, as part of a separation agreement, Larry Barnette remained the record owner of the stock, as shown on Treasury Form 5471, until 31 May 1984. And, the separation agreement entered into by the parties did not specifically require the stock transfer.

[2]Kathleen and Larry Barnette were separated at the time of the conviction and divorced in 1995.

[3]Both parties seemingly received actual notice because responses to these requests were filed on behalf of Larry Barnette and Kathleen Barnette.

a response was filed on her behalf.[4]

In April 1995 a show cause order was issued by the district court to each of the Barnettes instructing them to appear before the court to show cause why they should not be held in contempt for failure to comply with the prior discovery and production requests and orders and for evasion of the terms of the criminal forfeiture judgment. Again, Kathleen Barnette was served through her counsel; and she filed a response. She did not appear at the hearing.

In August 1995 both Larry and Kathleen Barnette were held in contempt and ordered to pay the outstanding balance on the forfeiture judgment, including interest from the date of Larry Barnette's conviction, fees (including attorneys fees), and expenses from the many years of enforcement proceedings.[5] Neither complied with the order, and arrest warrants were issued for both Appellants.[6]

In addition, a temporary restraining order was issued against Larry Barnette requiring the

---

[4]Larry Barnette was properly served in all relevant proceedings and did not challenge service or jurisdiction of the court.

[5]Kathleen Barnette was ordered to provide information necessary to determine the value of the stock transferred to her by her husband. She claims that this effectively held her responsible for an in personam judgment against Larry Barnette which resulted from his criminal conviction and that this judgment was being enforced against her without the proper procedural protections afforded a criminal defendant and without trial or conviction. She says the court orders were invalid on account of a lack of personal jurisdiction, and she argues that the contempt order cannot stand. Thus, she contends that there is nothing from which she is a fugitive. The basis for the district court's holding her in contempt, however, was not the conviction of her husband, but instead her refusal to comply with clear orders from the court regarding property she claimed to own that was the subject of the forfeiture judgment. Nonparties that actively aid and abet a party in violating a court order may be held in contempt of court. *See United States v. Paccione,* 964 F.2d 1269, 1274-77 (2d Cir.1992); *Waffenschmidt v. MacKay,* 763 F.2d 711, 714-17 (5th Cir.1985). According to the district court, Kathleen Barnette's lack of cooperation aided Larry Barnette in his scheme to avoid enforcement of the forfeiture judgment.

[6]Both Larry and Kathleen Barnette filed motions to stay the contempt judgment pending appeal. Both the district court and this court denied the motions.

surrender of his passport and enjoining travel away from his Florida home. Still, at the time of this appeal the whereabouts of Larry Barnette were—and are now—unknown. Kathleen Barnette has appealed the contempt judgment claiming, among other things, that the district court lacked personal jurisdiction over her, because she resides outside the nation's borders and is no longer a citizen of the United States.[7] But, she had remained a resident of Jacksonville, Florida throughout much of this eleven year ordeal, paying taxes as a Florida resident through 1992. Not until November 1994 did she renounce her United States citizenship—after the government's filing of its second contempt petition.

We stress that both Appellants have disobeyed court orders, have acted to effect a stay of the contempt judgments against them (a stay denied by this court), and have continued to evade arrest pursuant to the warrants issued by the district court.

*Discussion*

Pursuant to the court's request the parties to this appeal submitted supplemental briefs on the fugitive status of the Appellants and whether, given the circumstances, the court should even entertain the appeal of two people who have thus far refused to abide by the orders of the United States courts. We have the discretion to dismiss an appeal where the appellants are fugitives from

---

[7]Kathleen Barnette also challenged the contempt order claiming that it was criminal and not civil in nature and that she was not accorded the requisite procedural protections. Whether a contempt order is deemed criminal or civil depends upon the "character and purpose" of the order. *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 827, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994). A civil contempt order is compensatory and coercive. *Jove Engineering, Inc. v. I.R.S. (In re Jove Engineering),* 92 F.3d 1539, 1546 n. 4 (11th Cir.1996). A criminal contempt order is punitive. *See United States v. Mathews,* 997 F.2d 848, 851 (11th Cir.1993) (distinguishing criminal from civil contempt by stating that criminal contempt results in a sentence for a definite time without possibility of modification). The order in this case was civil—incarceration was only to last, if necessary, until compliance. The ability to issue civil contempt orders is an inherent power of the courts. *Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1301 (11th Cir.1991).

prior court orders and, in effect, refuse to acknowledge the courts' authority over them—the fugitive disentitlement doctrine.

*The Fugitive Disentitlement Doctrine*

The United States Supreme Court has long recognized an appellate court's ability to exercise its discretion by refusing to hear or to decide the appeal of a fugitive from justice. *See Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *Ortega-Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). A connection between the fugitive status and the course of the appellate proceedings is required. *Ortega-Rodriguez,* 507 U.S. at 242-48, 113 S.Ct. at 1205-07. Thus, to apply the fugitive disentitlement doctrine the appellant must be a fugitive and his fugitive status must have a connection, or nexus, to the appellate process he seeks to utilize.

"A fugitive from justice has been defined as "[a] person who, having committed a crime, flees from [the] jurisdiction of [the] court where [a] crime was committed or departs from his usual place of abode and conceals himself within the district.' " *Empire Blue Cross and Blue Shield v. Finkelstein,* 111 F.3d 278, 281 (2d Cir.1997) (citing *Black's Law Dictionary* 604 (5th ed.1979)). Expanding this definition as it applies to the fugitive disentitlement doctrine, it has been held that "a fugitive from justice need not be a fugitive in a criminal matter." *Id.* In *Finkelstein,* the Second Circuit, looking at this definition of fugitive, ruled that defendants in an entirely civil matter, facing a large judgment, were fugitives for purposes of the doctrine because they "continued to evade arrest." *Id.* at 282 (defendants' whereabouts unknown after issuance of bench warrants for failing to appear at depositions and to comply with court orders). *See also Perko v. Bowers,* 945 F.2d 1038 (8th Cir.1991) (doctrine can be applied in civil cases); *United States v. Van Cauwenberghe,* 934 F.2d 1048 (9th Cir.1991) (doctrine can be applied to quasi-criminal or civil cases). Under certain circumstances the disentitlement doctrine may be even more applicable to civil than criminal cases:

because a defendant-appellant's liberty is not at stake, less harm can come from the refusal to entertain the appeal. *See Conforte v. Commissioner,* 692 F.2d 587, 589 (9th Cir.1982).

The rationales for this doctrine include the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing that "fugitive" to use the resources of the courts only if the outcome is an aid to him, the need to avoid prejudice to the nonfugitive party, and the discouragement of flights from justice. *See Molinaro,* 396 U.S. at 366, 90 S.Ct. at 498-99; *see also Finkelstein,* 111 F.3d 278, 280 (2d Cir.1997).

That any judgment rendered by this court can be viewed by the Barnettes as merely advisory (and their compliance therewith optional) is our main concern in deciding the government's motion to dismiss this appeal. Impossibility of enforcement was the initial reason for the establishment of the fugitive disentitlement doctrine. *See Ortega-Rodriguez,* 507 U.S. 234, 239-40, 113 S.Ct. 1199, 1203-04, 122 L.Ed.2d 581, 590-93. In that first case the Supreme Court based its dismissal on the fact that "there could be no assurance that any judgment it issued would prove enforceable." *Ortega-Rodriguez,* 507 U.S. at 239-40, 113 S.Ct. at 1203 (citing *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876)). This lack of enforceability has been the rationale for dismissing appeals in subsequent cases since the establishment of the doctrine. *See, e.g., Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); *Eisler v. United States,* 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949).

The Supreme Court has refused to allow application of disentitlement when enforcement is possible despite the appellant's absence. *See Degen v. United States,* --- U.S. ----, ----, 116 S.Ct. 1777, 1781, 135 L.Ed.2d 102 (1996). Here, however, possession of the forfeited property, Old Dominion stock, lies with Kathleen Barnette—outside the reach of the government. So, while in *Degen* the property was present within the jurisdiction as a means of enforcement, that possibility

does not exist in this case. In this appeal, we seriously doubt any decision rendered against the Barnettes could be enforced against them.

*Larry Barnette*

That Larry Barnette is a fugitive from justice is clear.[8] A criminal forfeiture judgment was entered against him; and to avoid both its full enforcement and penalties associated with the contempt judgment, Larry Barnette has effectively disappeared. He is also a fugitive from the contempt order and the related bench warrant. He has either left the district or is concealing himself within it, in either case acquiring fugitive status. *See generally Finkelstein,* 111 F.3d at 281.

" "[I]ntent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities." *In re Assets of Martin,* 1 F.3d 1351, 1356 (3d Cir.1993). The defendant need not leave the jurisdiction, but—while legally outside the jurisdiction—may constructively flee by deciding not to return. *Id.* Larry Barnette knew of the forfeiture judgment, the show cause order, the contempt order, and bench warrant; but by hiding, he has refused to surrender himself to the jurisdiction of this court. So, he is, for the law's purposes, a fugitive from justice.

The requisite nexus exists between Larry Barnette's fugitiveness and this appeal. Both Appellants filed motions to stay the enforcement of the contempt orders against them; and both of their motions were denied both by the district court and this court. But, their fugitive status, in reality, effects a stay of that enforcement by making such enforcement impossible—in direct contravention of this court's holding as to the appropriateness of a stay.

No good reason exists to think that any decision in this case adverse to Mr. Barnette would affect the satisfaction of his forfeiture judgment. Mr. Barnette only wishes to use this court in an

---

[8]No one disputes that Larry Barnette's whereabouts are unknown. No one has contended that his absence is beyond his control.

attempt to receive a favorable judgment—the only judgment by which, it appears, he will abide. We decline to participate. "He who offends against the law seeks in vain the help of the law" is a very old legal maxim.

*Kathleen Barnette*

Kathleen Barnette poses a different situation. She has taken part in the many proceedings throughout these eleven years—hiring attorneys, responding to requests and appearing before the district court. She, however, is not and was not a criminal defendant at any point—no forfeiture judgment was entered against her. This circumstance does not preclude application of the fugitive disentitlement doctrine. *See Finkelstein,* 111 F.3d at 278 (judgment debtors in a civil case lost their right to appeal due to their fugitive status).

The disentitlement doctrine is based on equitable principles. *See United States v. Sharpe,* 470 U.S. 675, 681 n. 2, 105 S.Ct. 1568, 1573 n. 2, 84 L.Ed.2d 605 (1985). "While such [fugitive status] does not strip the case of its character as an adjudicable case or controversy ... it disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro,* 396 U.S. at 366, 90 S.Ct. at 499.

Kathleen Barnette is not a clearly innocent party in the government's effort to collect the shares of stock now owned by her. She acted in concert with Larry Barnette to hide assets and to transfer funds, resulting in inaccessibility to these monies by the government. This practice was shown by evidence put forward at the many hearings on the forfeiture of the stock in which Kathleen Barnette participated and by documents received by the government about the whereabouts of the stock and other assets.[9] She admitted, in a sworn statement, that she moved the assets of Old

---

[9]Funds were transferred from Old Dominion, the corporation for which stock was ordered forfeited, to accounts controlled by Kathleen Barnette. Both Larry and Kathleen Barnette exerted control over Old Dominion's business, and Kathleen Barnette testified in a deposition

Dominion to avoid the criminal forfeiture judgment. The district court specifically found that Kathleen Barnette "aided and abetted, or acted in concert with, Mr. Barnette in his scheme to evade the criminal forfeiture judgment." The district court further found that Ms. Barnette had actual notice of the forfeiture judgment against her husband on the stock, the restraining order addressing any transfer of the stock, and the show cause order for the contempt hearing. She has fought the stock forfeiture (as well as the forfeiture of funds from other sources) every step of the way; and she now asks us (1) to hold that the district court had no personal jurisdiction to render a judgment against her[10] and (2) to reverse her civil contempt violation.

Based upon her past conduct—including leaving the country[11]—and continued noncompliance with court orders, Kathleen Barnette seems to intend not to submit herself to the

---

that she often acted on the advice of Larry Barnette for the running of Old Dominion. Both Appellants were implicated in a scheme to bribe Panamanian officials to remove the freeze on Old Dominion assets so that the Barnettes could transfer them to Kathleen Barnette's accounts in England and in Switzerland, out of the reach of the United States government.

[10]We choose to stop short of deciding today whether or not an appellate court can exercise discretion to apply the fugitive disentitlement doctrine to decline to decide a contemnor's defense of lack of jurisdiction over the person. Instead, we choose to decide directly the question of personal jurisdiction. And we do conclude that the district court had personal jurisdiction over Kathleen Barnette. Non-parties, despite a court's initial lack of personal jurisdiction, "may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order." *Waffenschmidt v. MacKay,* 763 F.2d 711, 714-17 (5th Cir.1985). In this case, Kathleen Barnette did just that, aiding and abetting Larry Barnette, every step of the way—in hiding funds and financial information subject to the forfeiture judgment of which she had notice, to the discovery requests of which she had notice, and to the show cause order of which she had notice.

[11]That Kathleen Barnette's whereabouts are known does not change her status as a fugitive when her location is beyond the jurisdictional reach of the court. *See, e.g., Degen,* --- U.S. at ---- , 116 S.Ct. at 1777, 135 L.Ed.2d at 102 (citizen of U.S. and Switzerland returned to Switzerland before indictment—ultimately decided fugitive disentitlement did not apply because property subject to forfeiture remained in the United States). *See also Prevot v. Prevot (In re Prevot),* 59 F.3d 556 (6th Cir.1995) (French citizen who returned to France before issuance of arrest warrant for probation violation was disentitled).

authority of United States courts, including this one. Therefore, we have no confidence that, should we decide this case on the merits and hold that the district court properly entered the contempt order against her, Kathleen Barnette would recognize that court's authority and forfeit the stock at issue or present herself for incarceration.[12]

Kathleen Barnette is a fugitive from the contempt order and the ensuing bench warrants. Her status as a fugitive, like her husband's, flouts this court's authority by effecting the very stay that was prohibited by this court's denial of her motion to stay the contempt judgment pending appeal.

Applying the principle of disentitlement, Kathleen Barnette should not be entitled to an appeal in this court when she has repeatedly refused to abide by prior court orders, removed herself to the United Kingdom (beyond our reach), and renounced her United States citizenship.

*Conclusion*

Both Appellants have, in fact, disobeyed court orders, acted to effect a stay of the contempt judgment (a stay denied by this court), and continue to evade arrest warrants.

We have good reason to believe that a decision by this court would likely be ineffective against either Larry or Kathleen Barnette, given their fugitive status. Considering all of the rationales for the fugitive disentitlement doctrine, we believe the doctrine fits this case. So, we grant the government's motion to dismiss the appeal.

APPEAL DISMISSED.

---

[12]We recognize that means exist for attempting to gain the cooperation of foreign governments, such as that of the United Kingdom, in the collection of some judgments. But those means are dependent upon the cooperation of the foreign government, the actual means available in the foreign system, and the person's compliance with the foreign proceedings—over which United States courts have no control.