PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-4166

_____

D. C. Docket No. 95-517-CV-SH

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/22/99
THOMAS  K. KAHN
CLERK

FEDERAL DEPOSIT INSURANCE CORPORATION,

Plaintiff-Appellee,

versus

GHAITH R. PHARAON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 22, 1999)**

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

BLACK, Circuit Judge:

Appellant Ghaith R. Pharaon challenges the district court's application of the fugitive disentitlement doctrine to strike his answer and enter judgment against him on the Federal Deposit Insurance Corporation's (FDIC's) claims.  We conclude the district court erred by applying the fugitive  disentitlement doctrine in this case and therefore reverse.

# I. BACKGROUND

Appellant is a citizen of Saudi Arabia. In May 1992, a grand jury in the Southern District of Florida indicted Appellant on multiple charges arising from his dealings with CenTrust Bank and David L. Paul, the Chairman, CEO, and controlling shareholder of CenTrust. Specifically, the indictment charges Appellant with conspiracy, the object of which was "to deceive and mislead federal banking regulators and certain investors of CenTrust Bank as to the financial condition and long-term viability of the bank, as well as to impede and prevent the United States from supervising and regulating the investment activities of CenTrust Bank, and thereby to perpetuate DAVID L. PAUL'S control of the bank and to personally enrich defendant PAUL and others," in violation of 18 U.S.C. § 371, four counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2, two counts of bank fraud, in violation of 18 U.S.C. §§ 1344, 2, and one count of misapplication as to subordinated debentures, in violation of 18 U.S.C. §§ 657, 2. Appellant has never appeared in the criminal proceedings.

On January 27, 1995, the Resolution Trust Corporation (RTC), as receiver of CenTrust, brought this action against Appellant in state court, seeking $11 million in damages relating to Appellant's CenTrust dealings. Specifically, the RTC asserted claims of common law fraud, aiding and abetting common law fraud, and aiding and

abetting breach of fiduciary duty. The allegations in the civil complaint are related to those in the criminal case. Appellant removed the action to federal court.

The RTC moved to strike Appellant's answer, arguing that since Appellant was a fugitive from justice the fugitive disentitlement doctrine should bar him from participating in the civil matter. The district court granted the motion and entered judgment in favor of the FDIC, as successor to the RTC,[1] in the amount of $9.7 million. On appeal, this Court remanded for reconsideration in light of the Supreme Court's intervening decision in *Degen v. United States*, 517 U.S. 820, 116 S. Ct. 1777 (1996). *FDIC v. Pharaon*, 11th Cir., 1997 (No. 96-4844, July 31, 1997). On remand, the district court again struck Appellant's answer and affirmative defenses and entered judgment in favor of the FDIC in the amount of $9.7 million.

---

[1] On December 21, 1995, the RTC terminated and the FDIC succeeded to the RTC's interest in this case. *See* 12 U.S.C. § 1441a(m)(1).

## II.  ANALYSIS

The fugitive disentitlement doctrine is an equitable doctrine that limits access to the courts by fugitives from justice.  *United States v. Barnette*, 129 F.3d 1179, 1183-84 (11th Cir. 1997).  Although fugitive status "does not strip the case of its character as an adjudicable case or controversy[,] it disentitles the [fugitive] to call upon the resources of the Court for determination of his claims." *Id.*, 129 F.3d at 1184 (citation and quotation omitted).

The fugitive disentitlement doctrine has been applied to dismiss fugitives' criminal and civil appeals,[2] as well as fugitives' affirmative claims for relief.[3]  *See, e.g., Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S. Ct. 498, 498-99 (1970) (declining to adjudicate appellant's criminal appeal where appellant was a fugitive from justice in that case); *Barnette*, 129 F.3d at 1185-86 (applying the fugitive disentitlement doctrine to dismiss fugitives' appeal of a civil contempt order against them for failing to comply with a court order to enforce a forfeiture judgment entered

---

[2] In the appellate context, this Court has stated that "to apply the fugitive disentitlement doctrine the appellant must be a fugitive and his fugitive status must have a connection, or nexus, to the appellate process he seeks to utilize." *Barnette*, 129 F.3d at 1183.

[3] In the context of considering whether a district court properly applied the disentitlement doctrine to dismiss a *Bivens* action filed by a fugitive, this Court has stated "the dismissal of a civil action on fugitive disentitlement grounds requires that (1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court, dismissal, is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine." *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998) (citations omitted).

against one of them); *Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F.3d 278, 282 (2d Cir. 1997) (dismissing civil defendants' appeal from a civil judgment against them on the basis of the fugitive disentitlement doctrine where defendants failed to comply with discovery in aid of plaintiff's attempts to collect the judgment, failed to comply with the court's order to appear before the court, and failed to submit to the bench warrants issued by the court upon their failure to appear as ordered); *Prevot v. Prevot (In re Prevot)*, 59 F.3d 556, 567(6th Cir. 1995) (holding district court should have dismissed a father's suit brought under the International Child Abduction Remedies Act (ICARA) where the father was a fugitive felon, "inhibited the processes of the United States District Court . . . by making unavailable to it the depth of expert testimony that the court indicated that it needed," and was abusing the "laudable purposes of ICARA by employing it to further his scheme" to "escape American justice and responsibilities while holding his children with him").

We review a district court's application of the fugitive disentitlement doctrine for abuse of discretion. *Magluta*, 162 F.3d at 664 (citations omitted). Of course, the district court must first be correct in its determination that the doctrine can be applied. Tellingly, the FDIC has not cited any cases, and this Court has not found any federal cases, applying or upholding the application of the fugitive disentitlement doctrine in a civil case to strike a defendant's answer and enter judgment against him. Nor has

5

the FDIC cited any appellate cases, and this Court has not found any federal appellate cases, applying the doctrine against a fugitive appellee.

This Court recently stated the rationales for the fugitive disentitlement doctrine "include the difficulty of enforcement against one not willing to subject himself to the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him; and the need to avoid prejudice to the nonfugitive party." *Magluta*, 162 F.3d at 664 (citations omitted). Although these rationales may seem to apply where a fugitive in a criminal case seeks to defend himself in a civil case, we think it is very different to bar a fugitive from affirmatively seeking relief than to bar a fugitive from defending civil claims brought against him. Here, Appellant did not call upon the resources of the court for determination of his claims, but rather sought only an opportunity to be heard on the FDIC's claims against him.

In discussing the fugitive disentitlement doctrine, the Supreme Court has stated that "[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities," but "[t]he extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen v. United States*, 517 U.S. at 823, 116 S. Ct. at

6

1780 (citations omitted). "Principles of deference counsel restraint in resorting to inherent power and require its use to be a reasonable response to the problems and needs that provoke it." *Id.* at 823-24, 116 S. Ct. at 1781 (internal citation omitted) (citations omitted).

We conclude that application of the fugitive disentitlement doctrine in this case to bar Appellant, a fugitive in a criminal case, from defending himself in a civil case, albeit a related one, would not be "a reasonable response to the problems and needs that provoke[d]" the doctrine. If such application of the doctrine were permitted, virtually anyone might be able to obtain a judgment against a fugitive simply by filing a claim and moving for judgment based on the fugitive disentitlement doctrine. Such judgments likely would be viewed with much skepticism. As the Supreme Court has stated, "[t]he dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits."[4] *Degen*, 517 U.S. at 828, 116 S. Ct. at 1783. We therefore hold that the fugitive disentitlement doctrine, without more, may not be

_____

[4] We note that in a pre-*Degen* decision upholding the application of the fugitive disentitlement doctrine to bar a defendant from contesting a civil forfeiture, a holding no longer good law after the Supreme Court's decision in *Degen*, 517 U.S. at 829, 116 S. Ct. at 1783, the Second Circuit stated that "[e]ven were appellant in a purely defensive posture procedurally, such is not a relevant consideration for purposes of the disentitlement doctrine." *United States v. Eng*, 951 F.2d 461, 466 (2d Cir. 1991). This language was merely dicta, however, as the court pointed out the fugitive sought "affirmatively to litigate his as yet unidentified 'interest' in the defendant properties." *Id.* Even were the language not dicta, we find it unpersuasive.

7

applied to strike a civil defendant's answer and enter judgment against him. Since the fugitive disentitlement doctrine is inapplicable, it necessarily follows that the three-factor test of *Magluta* and the nexus requirement of *Barnette* are inapposite to this case and, for that matter, to any civil case where the fugitive is the defendant.[5]

We note in closing, however, that Appellant's absence does not entitle him to any advantage. If his "unwillingness to appear in person results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party." *Degen*, 517 U.S. at 827, 116 S. Ct. at 1782. Such sanctions may include striking his answer and entering judgment against him. *See, e.g.,* Fed. R. Civ. P. 37(b)(2)(C).[6]

## IV. CONCLUSION

The district court's decision to strike Appellant's answer and enter judgment against him was not a permissible exercise of the court's authority. We therefore reverse and remand to the district court for further proceedings.

REVERSED AND REMANDED.

---

[5] *See* Opinion, at 4 nn.2-3.

[6] We do not mean to imply by our holding that we do not have discretion to dismiss this appeal under the fugitive disentitlement doctrine. The FDIC simply did not move for such dismissal and we choose not to dismiss the appeal sua sponte.