[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15590
Non-Argument Calendar

_____

Agency No. A95-687-983

XIANG FENG ZHOU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 18, 2008)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner is a native and citizen of the People's Republic of China ("China"). He arrived in the United States at the Los Angeles International Airport on December 22, 2004. At the time of his arrival, he was not in possession of a valid entry document or a valid passport. The Department of Homeland Security ("DHS"), formerly the Immigration and Naturalization Service ("INS"), issued a Notice to Appear on January 7, 2005, charging him with removability under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of a valid entry document or valid travel document as required under 8 U.S.C. § 1181(a).

Petitioner, represented by counsel, appeared before the Immigration Judge ("IJ"), admitted the factual allegations in the Notice to Appear and conceded removability. On April 20, 2005, he filed applications for asylum, withholding of removal under the INA, and protection under the U. N. Convention Against Torture ("CAT"). The Immigration Judge held a hearing on the merits of the applications on November 18, 2005. Petitioner was the only witness to testify.

According to his asylum application, Petitioner is an unmarried male twenty-three years old. In his testimony before the IJ, he said that he practiced Falun Gong while in China, and therefore was considered a member of an "illicit organization." In May 2004, government officials took valuables from his home

2

and placed him in prison for three days. While in detention, he was interrogated once; the officials asked him the identities of other Falun Gong members and then beat him and slapped his face. He was released from custody after his father paid a fine. Five months later, in October 2004, the school he was attending discharged him for practicing Falun Gong.

Petitioner testified that in December 2004, with the help of a classmate's father, he left China, using a travel document given to him by the father's friend. He passed through three or four countries, staying at least several days in each country, including Japan, before arriving in the United States. Although he could have sought protection in any of these countries, he did not. In the statement he gave the INS officials on arriving at the Los Angeles International Airport, he did not mention any arrest or detention for practicing Falun Gong, only that he had been discharged from school and that his father had lost his job because of his, Petitioner's, Falun Gong activities.

At the conclusion of the November 18 hearing, the IJ found Petitioner removable as charged and denied his applications for asylum, withholding of removal and CAT protection. The IJ did so on the ground that Petitioner failed to meet his burden of proof; that is, his testimony was not credible. The IJ found that Petitioner's testimony at the hearing was inconsistent with what he stated in

his applications and that these inconsistencies were critical to his claims for asylum, withholding of removal and CAT protection. As an example of the inconsistency, the IJ pointed to Petitioner's testimony that his arrest and detention had been in May 2004, whereas his asylum application indicated that it occurred in October 2004. When confronted with the discrepancy, Petitioner first said that his attorney had erred in composing the application. But, when presented with his own hand writing on the document, he claimed that it was a mistake; he wrote down the story that his attorney's assistant gave him.

At the end of the day, the IJ found that Petitioner had willfully misrepresented a material fact to gain admission to the United States. He also found it improbable that after his purported arrest for Falun Gong, Petitioner was allowed to continue attending school for five months before being discharged due to his Falun Gong activity. The IJ noted, moreover, that Petitioner had not corroborated his claims and had presented no documents from his school.

Finally, the IJ found that Petitioner had not shown he suffered past persecution or a likelihood of future persecution upon his return to China. Because he had not established a well-founded fear of persecution, he was not entitled to asylum. In addition, he failed to meet the higher burden of proof of showing a clear probability of persecution necessary for withholding of removal. As for CAT

relief, the IJ noted that the Country Reports admitted into evidence indicated that individuals returned to China who have left illegally are generally fined, processed, and allowed to return home. Hence, it was not likely that the government would torture him upon his return.

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which affirmed. The BIA did so because Petitoner had not shown that the IJ's findings of fact, including the IJ's rejection of the material parts of Petitioner's testimony as not credible, were clearly erroneous.

Petitioner now seeks this court's review of the BIA's decision. Before undertaking such review, however, we must determine whether review is foreclosed under the "fugitive disentitlement doctrine" because Petitioner failed to report for removal on January 10, 2006, as instructed.

Petitioner argues that he never received the notice requiring him to appear. He claims that he has lived in Brooklyn, New York, since being released from DHS custody, and that he never resided at the address to which DHS sent the letter requiring him to appear. He has introduced affidavits supporting this statement, and argues that the fugitive disentitlement doctrine should not apply because he did not purposefully fail to comply with the removal order.

The "fugitive disentitlement doctrine limits access to courts by a fugitive

5

who has fled a criminal conviction in a court in the United States." Magluta v. Samples, 162 F.3d 662, 664 (11th Cir. 1998). "A fugitive [is a] person who, having committed a crime, flees from [the] jurisdiction of [the] court where [the] crime was committed or departs from his usual place of abode and conceals himself within the district." U.S. v. Barnette, 129 F.3d 1179, 1183 (11th Cir. 1997) (quotation omitted). A person is still a fugitive even if his location is known, when that location is beyond the jurisdictional reach of the court. Barnette, 129 F.3d at 1185 n.11. "The fugitive disentitlement doctrine has been applied at both the trial and appellate level and in both criminal and civil cases." Pesin v. Rodriguez, 244 F.3d 1250, 1252 (11th Cir. 2001).

"The power of a court to disentitle a fugitive from access to the court's power is not jurisdictional in nature." Id. "The doctrine is an equitable one and rests upon the power of the courts to administer the federal courts system." Id. "The rationales for this doctrine include the difficulty of enforcement against one not willing to subject himself to the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him; and the need to avoid prejudice to the nonfugitive party." Magluta, 162 F.3d at 664. "Other rationales underlying the doctrine include promoting the efficient operation of the courts . . .[and] discouraging flights from justice." Pesin, 244 F.3d at 1253.

6

"[D]ismissal of a civil action on fugitive disentitlement grounds is only appropriate [when] (1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction . . . is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine." Magluta, 162 F.3d at 664.

The doctrine is a "tool primarily for the court that had its jurisdiction invoked while the defendant was a fugitive." Lynn v. U.S., 365 F.3d 1225, 1240 (11th Cir. 2004) (citation omitted). "Absent some connection between a defendant's fugitive status and his appeal, as provided when a defendant is at large during the ongoing appellate process, the justifications advanced for dismissal of fugitives' pending appeals generally will not apply." Ortega-Rodriguez v. United States, 507 U.S. 234, 249, 113 S.Ct. 1199, 1208, 122 L.Ed.2d 581 (1993) (internal quotations and citation omitted). In the appellate context, "the appellant must be a fugitive and his fugitive status must have a connection, or nexus, to the appellate process he seeks to utilize." F.D.I.C. v. Pharaon, 178 F.3d 1159, 1161 n.2 (11th Cir. 1999) (quotation omitted). Thus, where the fugitive was returned before invocation of the appellate system, the appeals court could not dismiss the appeal under the doctrine, as there was no connection between the fugitive status and the appeal. Ortega-Rodriguez, 507 U.S. at 246, 249, 113 S.Ct. at 1207, 1208. In that case, the district court could use disentitlement as a tool to protect the integrity of

7

the judicial system, not the appellate court, because it was the district court's authority that had been questioned. Id. at 246, 113 S.Ct at 1207. We reversed dismissal under the doctrine where there was no connection between the fugitive status and the civil lawsuit. Malguta, 162 F.3d at 664 (holding while plaintiff was a fugitive at the time district court dismissed action, it was for an unrelated crime).

We decline to dismiss the instant petition under the fugitive disentitlement doctrine since the equities militate against its application. Although Petitioner allegedly failed to alert the DHS to his current address, any such failure was not the result of an unwillingness to subject himself to the court's authority or an attempt to use court resources only for his benefit. Moreover, DHS should have known of his new address, as it was his address of record throughout the administrative hearings. He was not attempting to conceal his location, and dismissing his petition would not promote the efficient operation of the courts.

Having decided that the doctrine does not bar our review in this case, we proceed to the merits. Petitioner argues that the IJ and the BIA erred in making an adverse credibility determination regarding his testimony; specifically, the IJ failed to provide cogent and specific reasons for rejecting his testimony as not credible. The inconsistency the IJ noted concerning the date Chinese officials arrested him for practicing Falun Gong was the result of a mistake on the written application.

8

The fact is that the police did arrest and physically harmed him for his practice of Falun Gong.

We review only the BIA's decision except to the extent the BIA expressly adopts the IJ's opinion or reasoning. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA issued its own opinion, upholding the IJ's adverse credibility determination, so we review the BIA's decision only.

When considering a petition to review a BIA final order or removal we review legal issues de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). The BIA's factual findings are reviewed under the substantial evidence test. Najjar, 257 F.3d at 1283. The same is true regarding credibility determinations. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Najjar, 257 F.3d at 1284. "To reverse a factual finding by the BIA, [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

An applicant's testimony, if credible, may be sufficient to sustain the burden of proof for asylum without corroboration. 8 C.F.R. § 208.13(a). Conversely, "an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue, 401 F.3d at 1287 (citations omitted). "An adverse credibility determination does not alleviate the [BIA]'s duty to consider other evidence produced by an asylum application." Id. "Further, the [BIA] must offer specific, cogent reasons for an adverse credibility finding." Id. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the [BIA]'s credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." Id. (quotation omitted). "[We] may not substitute [our] judgment for that of the [BIA] with respect to credibility findings." Id. at 1286. The BIA must make a "clean" determination of credibility. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

Regarding pre-REAL ID Act cases, other circuits have held that minor inconsistencies will not support an adverse credibility finding, but inconsistencies that go "to the heart of [the] asylum claim" are sufficient to support such a finding. See e.g., Chebchoub v. I.N.S., 257 F.3d 1038, 1043 (9th Cir. 2001) (persuasive authority). We, however, have never adopted the "heart of the claim" test in a published opinion. But see Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1369 (11th

10

Cir. 2005) (holding that IJ's concerns about credibility of applicant on "key elements of the claim," and applicant's "failure to rebut these with sufficient corroborating evidence and explanation," supported finding that applicant did not qualify for asylum). Congress amended the law regarding credibility determinations, but those changes only apply to applications for asylum filed after May 11, 2005. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006) (discussing REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 302, § 101(h)(2) ("REAL ID Act")). Under the new law, the credibility determination is based on the totality of the circumstances, which may include inaccuracies or falsehoods that do not go to the "heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

As an initial matter, the BIA erroneously applied the REAL ID Act's adverse credibility test to Zhou's claim, but this error does not require reversal, as the inconsistencies the BIA relied on concerned key elements of Petitioner's asylum claim. The BIA's adverse credibility determination based on the inconsistency in the arrest dates was a specific, cogent reason supported by substantial evidence to deny the asylum claim. Petitioner's confusing explanation of the inconsistency failed to rebut the determination. Similarly, the BIA's reliance on his failure to mention the arrest during an airport interview was another specific, cogent reason supported by substantial evidence to find him incredible. While

11

Petitioner offered evidence of the persecution of Falun Gong practitioners in China, the only evidence that he was a practitioner came from his discredited testimony. His claims for withholding of removal and CAT relief fail because he did not meet the less stringent standard for asylum. Failure to establish a claim of asylum on the merits necessarily causes a claim for withholding of removal or protection under CAT to fail. Forgue, 401 F.3d at 1288 n.4.

PETITION DENIED.