Tammy SEARLE

v.

**JUVENILE COURT FOR WILLIAMSON COUNTY,** Tennessee.

Supreme Court of Tennessee, at Nashville.

Oct. 2005 Session.

April 13, 2006.

John E. Herbison, Nashville, Tennessee, for the Appellant, Tammy Searle.

Lisa M. Carson, Franklin, Tennessee, for the Appellee, Juvenile Court for Williamson County, Tennessee.

## OPINION

ADOLPHO A. BIRCH, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

Pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure, we granted permission to appeal in this case in order to address a question of first impression: whether the petitioner's current status as a fugitive prevents consideration of her habeas corpus petition. Because we conclude that the fugitive disentitlement doctrine bars consideration of this habeas corpus petition, we affirm the judgment of the Court of Appeals.

## I. Facts and Procedural History

Omitting as much of the procedural history as is appropriate, we begin with the filing of petitions for contempt by the father of the minor child, Keith Pfister, against the mother, Tammy Searle (formerly Tammy Morretti). The petitions, filed in the Juvenile Court of Williamson County (hereinafter "Juvenile Court"), alleged that Searle had violated the court's orders regarding custody of and visitation with the minor child.

Following a hearing in June 2001, the Juvenile Court adjudicated Searle in contempt for failing to produce the minor child, for failing to comply with a subpoena, for failing to provide requested documents to the court, for failing to comply with visitation orders, and for failing to comply with orders regarding telephone contact between Pfister and the minor child. Searle did not appear for this hearing. As a result of the contempt adjudication, the court sentenced Searle to ten days incarceration for each of the fifty-nine contemptuous acts, to be served consecutively for an effective sentence of 590 days. Additionally, the court awarded temporary custody of the minor child to Pfister. Searle appealed this judgment to the Court of Appeals. The Court of Appeals concluded Searle had waived her right to appeal by evading arrest and by refusing to comply with the trial court's orders. Accordingly, the Court of Appeals dismissed her appeal. Because the State of California—where Searle apparently resides—has declined to extradite Searle, she has remained at liberty since entry of the Juvenile Court judgment.

On November 17, 2003, Searle filed a petition for the writ of habeas corpus in the Williamson County Circuit Court naming the Juvenile Court of Williamson County as defendant. After hearing the Juvenile Court's motion to dismiss, the trial court stated: "[T]he Court finds that Plaintiff's fugitive status precludes her from seeking habeas corpus review of the Juvenile Court's judgment." Accordingly, the circuit court dismissed the petition. Searle appealed, and the Court of Appeals affirmed the judgment of the circuit court dismissing the petition.

## II. Standard of Review

■ Whether habeas corpus relief is precluded by the fugitive disentitlement doctrine is a question of law. On appeal, our standard of review for a question of law is de novo with no presumption of correctness. *Presley v. Bennett,* 860 S.W.2d 857, 859–60 (Tenn.1993) (citing *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991)); *see also Hart v. State,* 21 S.W.3d 901, 903 (Tenn. 2000) (whether to grant a petition for habeas corpus relief is a question of law reviewed de novo).

### III.   Analysis

### Habeas Corpus

█    Relief from a court's judgment can be sought through a habeas corpus petition.   "[H]abeas corpus relief is available to a defendant only when the judgment is void on its face or the prisoner's sentence has expired." *Hart v. State*, 21 S.W.3d 901, 903 (Tenn.2000) (citing *Potts v. State*, 833 S.W.2d 60, 62 (Tenn.1992)); *see generally* Tenn.Code Ann. §§ 29–21–101 to –130 (2000).   "A void judgment is one in which the judgment is facially invalid because the court did not have the statutory authority to render such judgment." *Hart*, 21 S.W.3d at 903 (quoting *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn.1998)).   Additionally, even those not currently incarcerated may be eligible for relief through a writ of habeas corpus if they are "restrained of liberty." *See generally* Tenn. Code Ann. § 29–21–101 to –130 (2000); *Hickman v. State*, 153 S.W.3d 16, 22–23 (Tenn.2004).

The petitioner in the case under review contends that the judgment is void on its face.   Searle insists that her 590 day sentence is void because the Juvenile Court was without authority to impose a sentence of more than six months without the petitioner having waived her right to trial by jury.   Although not currently incarcerated, this judgment, the petitioner suggests, is the cause or pretense of the current restraint to her liberty.   Before addressing the merits of Searle's petition, we must discuss the fugitive disentitlement doctrine as it may apply to Searle.

### Fugitive Disentitlement Doctrine

█    The fugitive disentitlement doctrine bars an individual from calling upon the resources of the court while at the same time "thumbing his nose" at its orders.   Because individuals who have fled or escaped have displayed defiance for the judicial system, appellate courts have been reluctant to hear their appeals. *United States v. Wright*, 902 F.2d 241, 242 (3d Cir.1990) (citing *Hussein v. INS*, 817 F.2d 63 (9th Cir.1986); *United States v. Holmes*, 680 F.2d 1372 (11th Cir.1982)).   "The fugitive disentitlement doctrine limits access to courts in the United States by a fugitive who has fled a criminal conviction in a court in the United States.   The doctrine is long-established in the federal and state courts, trial and appellate." *In re Prevot*, 59 F.3d 556, 562 (6th. Cir.1995).   More specifically, in Tennessee, this Court held that a fugitive's appeal should be peremptorily dismissed on motion. *Bradford v. State*, 184 Tenn. 694, 202 S.W.2d 647, 648–49 (1947).   Furthermore, the denial of access to appellate courts by fugitives is not limited to criminal cases but occurs in civil cases also. *In re Prevot*, 59 F.3d at 563 (listing cases).

█    As public policy, the doctrine has been justified because of enforceability concerns, because of its deterrence function, because it advances efficiency in the appellate process, because it is a sanction for disrespect of the court, and because flight is construed as a waiver. *Ortega–Rodriguez v. U.S.*, 507 U.S. 234, 240–47, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).   In *Molinaro*, the Supreme Court declined to adjudicate a case because the defendant failed to surrender and was considered a fugitive from justice. *Molinaro v. New Jersey*, 396 U.S. at 365, 90 S.Ct. 498 (1970).   The Court opined,

No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction.   While such an escape does not strip the case of its character as an adjudicable case or

controversy, we believe it disentitles the defendant to call upon the resources of the Court for the determination of his claims.

*Id.* at 366, 90 S.Ct. 498.

"Numerous cases have denied appellate access to appellants seeking review of denials of habeas corpus relief." *In re Prevot,* 59 F.3d at 563 (citations omitted). Moreover, in the Eastern District of Tennessee, the U.S. District Court held that fleeing during the appeal process "is an inexcusable procedural default, thus barring federal habeas corpus review." *Potter v. Davis,* 519 F.Supp. 621, 622 (E.D.Tenn.1981) (citing *Strickland v. Hopper,* 571 F.2d 275 (5th Cir.1978)). It is sound public policy to discourage the absence and flight of those individuals who disagree with court orders and judgments but still seek appellate relief; the fugitive disentitlement doctrine furthers that goal. For as long as a petitioner flouts the court's judgment in the case in which habeas corpus relief is sought, we conclude that the court may not be required to rule on the merits of the petition and may dismiss it.

### Fugitive Status

■ Searle asserts that she is not a fugitive and thus not subject to the fugitive disentitlement doctrine. The petitioner's contention relies on the definition of a "fugitive of justice" as being one "who commits a crime in one state, leaves and is found in another state." Searle persists that the record does not indicate that she fled from any crime committed while in the State of Tennessee, and for that reason she contends that she is not a fugitive. We reach a different conclusion.

We have defined a "fugitive from justice" as an individual who has fled from a demanding state where the person is charged with a crime. *State ex rel. Lea v.*

*Brown,* 166 Tenn. 669, 64 S.W.2d 841, 842 (1933). Additionally, the United States Supreme Court has explained that one must be present in the state when the alleged crime was committed for the individual to be a fugitive; however, this interpretation is applicable to extradition cases. *See South Carolina v. Bailey,* 289 U.S. 412, 420–22, 53 S.Ct. 667, 77 L.Ed. 1292 (1933) (unless defendant can show beyond a reasonable doubt presence outside the demanding jurisdiction at the time of the alleged crime then the defendant is a fugitive from justice who should be extradited); *Appleyard v. Massachusetts,* 203 U.S. 222, 227, 27 S.Ct. 122, 51 L.Ed. 161 (finding a fugitive from justice eligible for extradition); *accord State ex rel. Lea,* 64 S.W.2d at 844 ("presence of the accused in the demanding state at or about the time the crime was committed is essential to the right of extradition"). A broader definition of fugitive has been applied, however, in fugitive disentitlement cases. *See Molinaro v. New Jersey,* 396 U.S. 365, 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (dismissing the appeal of a defendant's conviction, when the defendant who was free on bail failed to surrender); *Smith v. United States,* 94 U.S. 97, 97, 24 L.Ed. 32 (1876) (refusing to hear case of escaped defendant who remained at large).

We conclude that the standard for defining "fugitive" is different and more stringent for extradition purposes than in fugitive disentitlement cases. We find the following facts relevant to determine whether Searle is a fugitive. Searle previously submitted to the jurisdiction of the Juvenile Court, and she was aware of the court orders concerning the minor child of the parties. She was also aware of her obligation to appear in court. Indeed, instead of complying with the orders of the court, she has flouted the authority of the court on several occasions by disregarding

its orders and refusing to appear. This behavior undergirded the subsequent findings of contempt and Searle's resulting sentence of incarceration by the trial court. Moreover, Searle purposely continues to place herself beyond the physical reach of the Juvenile Court. For these reasons, we find that Searle is a fugitive as it relates to the application of the fugitive disentitlement doctrine.

### Nexus or Connection

■ Because habeas corpus relief and the care and custody of one's child are fundamental rights, before we apply the disentitlement doctrine to Searle's petition, we must determine whether Searle's fugitive status has a considerable connection to the pending matter. "The Supreme Court has expressed doubt about a rule that would require automatic dismissal of an appeal for conduct by a defendant having no connection with the appellate proceedings." *In re Prevot*, 59 F.3d at 566 (citing *Ortega–Rodriguez v. U.S.*, 507 U.S. at 246–47, 113 S.Ct. 1199 (1993)). Because a fundamental right is involved we will require a nexus before applying the fugitive disentitlement doctrine.

Relying on *March v. Levine*, 249 F.3d 462, 470 (6th Cir.2001) and *Walsh v. Walsh*, 221 F.3d 204, 216 (1st Cir.2000), Searle contends that "applying the fugitive disentitlement doctrine would impose too severe a sanction in a case involving parental rights." While *March* and *Walsh* both present issues concerning parental rights, those cases are distinguishable from the instant case.

*Walsh* and *March* both involved an international custody dispute in which one party sought dismissal based on the fugitive disentitlement doctrine. *Walsh*, 221 F.3d at 208; *March*, 249 F.3d at 469. The *March* court found that the father's particular non-criminal contempts were "patently insignificant grounds" to disentitle the father from arguing an ICARA[1] petition. *March*, 249 F.3d at 470. In *Walsh*, the court concluded that barring a parent from access to the court based on fugitive status "is too harsh particularly in the absence of any showing that the fugitive status has impaired the rights of the other parent." 221 F.3d at 216. The underlying facts of the *Walsh* court's rationale, however, are inapposite to the facts of Searle's case because it was Searle's behavior that interfered with the rights of the minor child's father, and it was that same behavior that caused the court to find her in contempt.

To distinguish further, both *March* and *Walsh* involved claims of child abduction brought under international law, and the issue was custody. *March*, 249 F.3d at 462; *Walsh*, 221 F.3d at 216. In both cases, the court found that the alleged fugitive's status was not sufficiently connected to the pending matter to apply the fugitive disentitlement doctrine. *March*, 249 F.3d at 470; *Walsh*, 221 F.3d at 215.

Unlike the relief sought in *March* and *Walsh*, Searle's petition is for habeas corpus relief. Her reliance on cases involving fundamental parental rights is misplaced because she seeks to challenge, indirectly, a judgment of incarceration. Additionally, Searle's fugitive status stems from her refusal to abide by the judgment of the Juvenile Court of Williamson County. The Juvenile Court sentenced Searle for contempt, and the sentence that Searle presently evades is the same that she attempts to vacate on appeal. Accordingly, we find

---

1. Under the International Child Abduction Remedies Act (ICARA), the American father who had moved to Mexico with his two biological children, of whom he had custody, petitioned for return of the children after the maternal grandparents had removed the children to the United States. *March v. Levine*, 249 F.3d 462 (6th Cir.2001).

that Searle's habeas corpus petition has a direct connection to her current fugitive status.

Because Searle is a fugitive and because her fugitive status is directly connected to her pending appeal, we will not allow Searle to refuse to obey a court order and then seek to obtain a favorable conclusion on appeal regarding the same matter. Thus, we conclude that Searle is not entitled to a hearing on the merits of her habeas corpus petition.

## V. Conclusion

We conclude that under the facts of this case, the defendant was and remains a fugitive from the State of Tennessee, and her fugitive status is significantly connected to the pending appeal. Because we find that the fugitive disentitlement doctrine applies to this case, we hold that the defendant is not entitled to a hearing on the merits of the petition for the writ of habeas corpus. The costs of this appeal are taxed to the plaintiff-appellee, Tammy Searle and her surety, for which execution may issue if necessary.