IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 15, 2012

**STATE OF TENNESSEE v. ALLEN KELLEY**

**Direct Appeal from the Circuit Court for Franklin County**
**No. 19749      Thomas W. Graham, Judge**

**No. M2011-02758-COA-R3-JV - Filed November 9, 2012**

This is an appeal from the dismissal of Appellant/juvenile's appeal of the juvenile court's determination of delinquency to the circuit court pursuant to Tennessee Code Annotated Section 37-1-159. While the appeal was pending, Appellant ran away from the group home, where he had been ordered to live. Appellee Department of Children's Services filed a motion to dismiss the appeal. The circuit court determined that the appeal should be dismissed based upon application of the fugitive disentitlement doctrine. The court further determined that Appellant had capacity, under the Rule of Sevens, to be held responsible for his actions. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

B. Jeffery Harmon, District Public Defender; and Robert G. Morgan, Assistant Public Defender; Jasper, Tennessee, for the appellant, Allen Kelley.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General, for appellee, State of Tennessee.

**OPINION**

Appellant Allen Kelley (d/o/b February 7, 1996) was on probation for unruly behavior when the four petitions at issue in this appeal were filed. The first three petitions alleged that Mr. Kelley had committed three separate probation violations by failing to obey his mother on two different occasions, and by failing to obey the rules at Franklin County High School. In the fourth petition, Stacy Shrum, of the Winchester Police Department, alleged that, on

May 29, 2011, Mr. Kelley again violated the terms of his probation by refusing to obey his mother and turning over a table and breaking a window in the residence.

On June 8, 2011, the Juvenile Court entered an order, finding that Mr. Kelley had violated his probation by committing the delinquent acts described in the foregoing petitions. Mr. Kelley was removed from his mother's custody and placed in the custody of Appellee State of Tennessee Department of Children's Services ("DCS"). Specifically, the court order states:

> Youth specifically found guilty of JCIS probation violations. Youth has 2 prior convictions for disorderly conduct, a prior unruly / runaway, and a prior violation of probation. Court considers him to be a disruptive force in the F.C. school system. Youth was under a suspended commitment order.

Following entry of the June 8 order, Mr. Kelley filed a notice of appeal to the Franklin County Circuit Court on June 30, 2011. Mr. Kelley also completed an affidavit of indigency and a public defender was appointed to represent him. Mr. Kelley was placed in a group home in Blount County for assessment. He remained at that home for approximately thirty days, during which time DCS determined that he should be placed in a "level 2 group home." On July 7, 2011, within twenty-four hours of arriving at the level two home, Mr. Kelley ran away from the facility.

The appeal was scheduled for hearing on July 19, 2011. On that day, Mr. Kelley did not appear to prosecute his appeal and DCS filed a petition to dismiss the appeal based upon the fact that Mr. Kelley had run away. Mr. Kelley was eventually taken back into DCS custody, approximately ten weeks after he ran away, but not before incurring additional charges of delinquent acts in Cumberland and Coffee counties.

At a hearing on October 11, 2011, DCS renewed its motion to dismiss the appeal. By order of November 18, 2011, the Circuit Court dismissed Mr. Kelley's appeal, finding that the fugitive disentitlement doctrine was applicable, and that the Rule of Sevens was the applicable standard for determining whether Mr. Kelley should be held responsible for his actions.

Mr. Kelley filed a notice of appeal to this Court and presents two issues for review, which we state as follows:

> 1. Whether the trial court properly applied the fugitive disentitlement doctrine in dismissing Appellant's appeal from

the juvenile court's delinquency determination.

2. Whether the trial court properly applied the Rule of Sevens to determine that Appellant should be held responsible for his actions.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). However, "if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness." ***Forrest Construction Co., L.L.C. v. Laughlin***, 337 S.W.3d 211, 220 (Tenn. Ct. App. 2009) (citing ***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997)). Questions of law are reviewed *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d).

## Fugitive Disentitlement Doctrine

In the instant case, Mr. Kelley is a juvenile, seeking relief from an order committing him to DCS custody. His appeal is in accordance with Title 37 of Tennessee Code Annotated, which provides, *inter alia*, for the adjudication and placement of unruly or delinquent children. Tenn. Code Ann. §§ 37-1-101 through -183. As part of the statutory scheme, the juvenile respondent is entitled to a *de novo* appeal from the juvenile court to the circuit court. Tenn. Code Ann. § 37-1-159; Tenn. R. Juv. P. 36. However, an appeal from the juvenile court's order does not release the minor from the custody of the person or agency to which the child's care has been committed. Tenn. Code Ann. §37-1-159(b). Rather, any juvenile adjudicated to be delinquent who attempts to flee from a licensed foster home, a facility operated by a licensed child care agency, or any other suitable facility operated by the court may be charged with escape. Tenn. Code Ann. §37-1-116(j). A primary purpose of the legislation governing juvenile courts and proceedings is to remove "the taint of criminality and consequences of criminal behavior." Tenn. Code Ann. §37-1-101(2); ***State v. Rodgers***, 235 S.W.3d 92, 94 (Tenn. 2007). Mr. Kelley first contends that, because the juvenile court's determination of delinquency involves non-criminal findings, he cannot be classified as a "fugitive" for purposes of the fugitive disentitlement doctrine. We respectfully disagree.

In ***Searle v. Juvenile Court for Williamson County***, 188 S.W.3d 547 (Tenn. 2006), the Tennessee Supreme Court discussed the fugitive disentitlement doctrine as follows:

The fugitive disentitlement doctrine bars an individual from

-3-

calling upon the resources of the court while at the same time "thumbing his nose" at its orders. Because individuals who have fled or escaped have displayed defiance for the judicial system, appellate courts have been reluctant to hear their appeals. United **States v. Wright**, 902 F.2d 241, 242 (3d Cir.1990) (citing **Hussein v. INS**, 817 F.2d 63 (9th Cir.1986); **United States v. Holmes**, 680 F.2d 1372 (11th Cir.1982)). "The fugitive disentitlement doctrine limits access to courts in the United States by a fugitive who has fled a criminal conviction in a court in the United States. The doctrine is long-established in the federal and state courts, trial and appellate." **In re Prevot**, 59 F.3d 556, 562 (6th. Cir.1995). More specifically, in Tennessee, this Court held that a fugitive's appeal should be peremptorily dismissed on motion. **Bradford v. State**, 184 Tenn. 694, 202 S.W.2d 647, 648–49 (1947). Furthermore, **the denial of access to appellate courts by fugitives is not limited to criminal cases but occurs in civil cases also**. **In re Prevot**, 59 F.3d at 563.

**Searle**, 188 S.W.3d at 550 (emphasis added). "As public policy, the doctrine has been justified because of enforceability concerns, because of its deterrence function, because it advances efficiency in the appellate process, because it is a sanction for disrespect of the court, and because flight is construed as a waiver." **Id**. (citing **Ortega-Rodriguez v. U.S.**, 507 U.S. 234, 240–47, 113 S. Ct. 1199, 122 L. Ed.2d 581 (1993)). "It is sound public policy to discourage the absence and flight of those individuals who disagree with court orders and judgments but still seek appellate relief; the fugitive disentitlement doctrine furthers that goal." **Id**. Appellate disentitlement "is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of equitable concerns make it a proper sanction." **People v. Puluc–Sique,** 182 Cal. App. 4th 894, 897, 106 Cal. Rptr. 3d (Cal. 2010).

Initially, the fact that the juvenile court's determinations of delinquency and violation of probation were not criminal in nature is not dispositive based upon the specific holding in **Searle** that the fugitive disentitlement doctrine is "not limited to criminal cases." **Id**. (citing **In re Prevot**, 59 F.3d 556, 563 (6th Cir. 1995)). In fact, in most jurisdictions, the fugitive disentitlement doctrine, although traditionally applied to criminal cases, extends to civil cases as well. *See, e.g.*, **Degen v. United States**, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) (considering the doctrine in a civil forfeiture case); **Empire Blue Cross & Blue Shield v. Finkelstein**, 111 F.3d 278, 281 (2d Cir. 1997) (applying the doctrine in a civil RICO Act appeal). Indeed, numerous jurisdictions recognize the doctrine in the context of Hague Convention and other domestic cases. *See, e.g., **Pesin v. Rodriguez**, 244 F.3d 1250,

1253 (11th Cir. 2001) (dismissing an ICARA appeal where the appellant had continuously refused to comply with court orders, had been found guilty of contempt, and had a warrant for her arrest); *Prevot v. Prevot*, 59 F.3d 556, 562–67 (6th Cir. 1995) (dismissing the appellant's Hague Convention appeal where he fled the country with his wife and child to avoid criminal charges and lived in France); *Guerin v. Guerin*, 116 Nev. 210, 993 P.2d 1256, 1258 (2000) (dismissing the appeal under the doctrine "in light of [appellant]'s fugitive status and continued refusal to comply with the district court's orders" in a divorce case); Matsumoto, 792 A.2d 1222, 1222 (N.J. 2002) (considering the fugitive disentitlement doctrine in a domestic case); *Scelba v. Scelba*, 342 S.C. 223, 535 S.E.2d 668, 670–73 (S.C. 2000) (applying the fugitive disentitlement doctrine where the appellant did not comply with a court order and was held in contempt for her failure to appear at multiple hearings).

Courts applying this doctrine have uniformly held that "a fugitive from justice need not be a fugitive in a criminal matter." *Finkelstein*, 111 F.3d at 281; *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997).

> The inquiry is not whether the order flouted is criminal or civil, or whether the case in which the doctrine is sought to be invoked is criminal or civil. [Rather,] it is the flight or refusal to return in the face of judicial action that is the critical predicate to fugitive disentitlement.

*Matsumoto*, 792 A.2d at 1233. Indeed, "[u]nder certain circumstances the disentitlement doctrine may be even more applicable to civil than criminal cases: because a defendant-appellant's liberty is not at stake, less harm can come from the refusal to entertain the appeal." *Barnette*, 129 F.3d at 1183. Furthermore, although a litigant may qualify as a fugitive by fleeing the jurisdiction, a litigant may also, "while legally outside the jurisdiction, 'constructively flee by deciding not to return.'" *Matsumoto*, 792 A.2d at 1228 (quoting *Barnette*, 129 F.3d at 1184).

Several courts have explained the bases for disentitlement of access to an appellate court:

> The rationales for this doctrine include the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing that "fugitive" to use the resources of the courts only if the outcome is an aid to him, the need to avoid prejudice to the nonfugitive party, and the discouragement of flights from justice.

***Barnette***, 129 F.3d at 1183 (citing ***Molinaro v. New Jersey***, 396 U.S. 365, 366, 90 S.Ct. 498, 498 (1970)). The United States Court of Appeals for the Second Circuit has noted that disentitlement is appropriate when an appellant's fugitive status "impacts the very case on appeal," the record contains no indication the appellant will respond to a judgment except one favorable to him, the appellant's conduct will render the judgment unenforceable against him, and the application of the doctrine is the only means of minimizing prejudice to the appellee. ***Finkelstein***, 111 F.3d at 282. Similarly, the Supreme Court of New Jersey has noted that the following standards are generally applied:

> [T]he party against whom the doctrine is to be invoked must be a fugitive in a civil or criminal proceeding; his or her fugitive status must have a significant connection to the issue with respect to which the doctrine is sought to be invoked; invocation of the doctrine must be necessary to enforce the judgment of the court or to avoid prejudice to the other party caused by the adversary's fugitive status; and invocation of the doctrine cannot be an excessive response.

***Matsumoto***, 792 A.2d at 1233 (citing ***Degen***, 517 U.S. at 824–28, 116 S.Ct. at 1781–83). "Enforceability concerns clearly animate [the] disentitlement doctrine . . . [and an appellant's absence] weighs heavily in favor of disentitlement." ***Finkelstein***, 111 F.3d at 282.

These considerations clearly weigh in favor of applicability of the fugitive disentitlement doctrine outside the criminal law.  In fact, the doctrine is an equitable tool, which should be available to courts, both civil and criminal, as a means of vindicating the court's authority.  Accordingly, Mr. Kelley's argument that the doctrine should not apply in this case, which is not criminal in nature, is unpersuasive.

Mr. Kelley further contends that his age, alone, should bar application of the fugitive disentitlement doctrine.   We infer that he means to assert that the fugitive disentitlement doctrine should never be applied against a juvenile defendant.  In support of this proposition, Mr. Kelley relies upon both the ***Ortega-Rodriguez*** case and the ***Searle*** case.  In both of these cases, the petitioner was an adult; however, there is no holding in either case that specifically precludes the application of the fugitive disentitlement doctrine to juvenile proceedings, nor has the Appellant supplied any authority in support of this argument.  That being said, the underlying purpose of fugitive disentitlement does not appear to be usurped by application of that doctrine in cases involving juvenile defendants. Because Tennessee courts have not specifically addressed this question, we find guidance in the caselaw of our sister states.

In ***In re Sheena C.***, 896 N.Y.S.2d 670 (N.Y. Fam. Ct. March 9, 2010), the New York Family Court was hesitant to take substantive action in the absence of the juvenile. ***Id***. at

789. However, the court ultimately granted the agency's application to restore the juvenile delinquency proceeding, which was adjourned in contemplation of dismissal *ex parte*. **Id**. In so doing, the court reasoned that its failure to act could render the application untimely and divest the court of jurisdiction if the juvenile did not appear prior to the expiration of the adjournment. **Id**. The court noted that such outcome would be contrary to the purpose of the juvenile delinquency statute to empower the court to intervene and positively impact the lives of troubled young people while protecting the public. **Id**. Accordingly, granting the state's application was consistent with the fugitive disentitlement doctrine, which precluded a litigant who refused to submit to the jurisdiction of court from seeking affirmative relief or from interposing a defense, as the absent litigant was unavailable to comply with any mandates which the court might issue. **Id.**

In *In re Lamontae D.M.*, 589 N.W.2d 415 (Wis. Ct. App. 1998), the Wisconsin Court of Appeals applied that state's version of the fugitive disentitlement doctrine, i.e., the "escape rule," to dismiss a juvenile's appeal of the finding of delinquency. Like our Appellant, the appellant in the Wisconsin case absconded from a group home during the pendency of his appeal. The Wisconsin appellant argued, *inter alia*, that the fugitive disentitlement doctrine was not applicable in non-criminal, juvenile actions. The Wisconsin Court disagreed, noting:

> In *State v. Troupe*, 891 S.W.2d 808 (Mo. 1995), the Missouri Supreme Court listed several justifications for the escape rule. First, a defendant's escape has an adverse impact on the criminal justice system. Second, a defendant cannot be permitted to speculate on the chances of reversal, keeping out of the reach of justice in hopes of securing a reversal but being prepared to remain a fugitive in the event of an affirmance. Third, a defendant's escape creates administrative problems for appellate courts, which would be required to place an appeal on hold for an inordinate length of time. Fourth, the extended delay caused by an escape creates an almost certain prejudice to the state in the event of a remand. In *State v. Canty*, 278 N.J.Super. 80, 650 A.2d 391 (App. Div. 1994), the court recognized two other justifications for the escape rule. First, any order rendered by an appellate court cannot be enforced against a fugitive. Second, the dismissal because of escape has a deterrent function and promotes efficient and dignified appellate practice.
>
> We conclude that all of these justifications for the escape rules are compelling reasons why it should be applied to Lamontae [a minor]. Lamontae's absconding from the residential treatment

center evinces his complete rejection of the rehabilitative opportunities provided by the juvenile court. Likewise, his flight further demonstrates his utter contempt for the judicial system and lack of respect for the laws of the State of Wisconsin. We acknowledge that in dismissing this appeal we are denying Lamontae review of a constitutional claim—whether the stop and subsequent search were violative of the Fourth Amendment of the Constitution. However, "respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." If Lamontae wants to take advantage of his constitutional protections, he should not show contempt for the lawful judicial process by absconding from a treatment center during the pendency of his appeal.

*Id*. at 418 (some internal citations omitted).

We find the reasoning of both the New York and Wisconsin courts to be persuasive. As was the case in ***Sheena C.***, the juvenile court's control over the welfare of Mr. Kelley is as fleeting as his youth. The more Mr. Kelley confounds the remedial purposes of the juvenile justice statutes, the closer he gets to committing offenses for which the adult penal system may be employed. The use of the fugitive disentitlement doctrine ensures the vindication of the juvenile court's authority in dealing with juveniles before they reach the age of majority. We find nothing in this area of jurisprudence from which to conclude that the juvenile courts should not have use of this doctrine in order to further the lawful judicial process and authority of that court.

The question, then, is whether the facts of this particular case require application of the fugitive disentitlement doctrine to dismiss Mr. Kelley's appeal. To answer this question, we turn to the ***Searle*** opinion, where we find guidance concerning the definition of "fugitive" and the application of the fugitive disentitlement doctrine in Tennessee. In ***Searle***, the petitioner was an adult who had been sentenced to jail for refusal to obey various orders of the juvenile court, regarding custody and visitation with petitioner's minor child. The petitioner in ***Searle*** sought relief while continuing to remain out of State. On appeal, petitioner asserted that she was not a fugitive so as to be subject to the fugitive disentitlement doctrine because she had not committed a crime and then fled from the state. In ***Searle***, the Tennessee Supreme Court explained that the definition of "fugitive" was different and more stringent for extradition purposes than in fugitive disentitlement cases and proceeded to apply a fact-based analysis in determining that the petitioner was subject to the disentitlement doctrine:

We conclude that the standard for defining "fugitive" is different and more stringent for extradition purposes than in fugitive disentitlement cases. We find the following facts relevant to determine whether Searle is a fugitive. Searle previously submitted to the jurisdiction of the Juvenile Court, and she was aware of the court orders concerning the minor child of the parties. She was also aware of her obligation to appear in court. Indeed, instead of complying with the orders of the court, she has flouted the authority of the court on several occasions by disregarding its orders and refusing to appear. This behavior undergirded the subsequent findings of contempt and Searle's resulting sentence of incarceration by the trial court. Moreover, Searle purposely continues to place herself beyond the physical reach of the Juvenile Court. For these reasons, we find that Searle is a fugitive as it relates to the application of the fugitive disentitlement doctrine.

*Searle*, 188 S.W.3d at 551–52. Although the *Searle* Court allowed a more expansive definition of "fugitive" for application of the fugitive disentitlement doctrine, it went on to hold that there must be some nexus, or connection, between the petitioner's fugitive status and the pending matter:

[B]efore we apply the disentitlement doctrine to Searle's petition, we must determine whether Searle's fugitive status has a considerable connection to the pending matter. "The Supreme Court has expressed doubt about a rule that would require automatic dismissal of an appeal for conduct by a defendant having no connection with the appellate proceedings." *In re Prevot*, 59 F.3d at 566 (citing *Ortega–Rodriguez v. U.S.*, 507 U.S. at 246–47, 113 S.Ct. 1199 (1993)). Because a fundamental right is involved we will require a nexus before applying the fugitive disentitlement doctrine.

*Searle*, 188 S.W.3d at 552.

In this case, Melanie Bowling, who is employed by DCS, testified concerning Mr. Kelley's history with DCS and the juvenile court. According to the record, Mr. Kelley has a long history of refusing to cooperate with the juvenile court. In fact, at the time of the adjudication giving rise to this appeal, Mr. Kelley had two prior convictions for disorderly conduct, a prior unruly/runaway determination, and a prior probation violation. It is clear

that, instead of complying with the court's order placing him in a facility, which was designed to aid in his rehabilitation pending appeal of the matter, Mr. Kelley chose a course of conduct that further endangered his own welfare. Not only did he flee from the facility, but he also engaged in additional delinquent acts during that time. Under the **Searle** case, the facts of this case support a finding that Mr. Kelley is a "fugitive" in the sense that he has consistently disobeyed the court's orders and authority, and has, in fact, physically fled from the court's reach. The facts further support a finding that Mr. Kelley's fugitive status was directly related to the pending appeal: while he refused to obey a court order, Mr. Kelley (at the same time) sought to obtain a favorable conclusion on appeal regarding the same matter. This is the exact type of behavior that the fugitive disentitlement doctrine was designed to prevent.

Although the facts of this case support a finding that Mr. Kelley's appeal was properly dismissed pursuant to the fugitive disentitlement doctrine, we must also consider the fact that Mr. Kelley is a minor. As noted above, minority, alone, will not suffice to negate application of the fugitive disentitlement doctrine. However, if the minor cannot be held responsible for his or her conduct, then the doctrine may be inapplicable to the case on grounds of equity. This question requires us to review whether the trial court properly applied the Rule of Sevens to find that Mr. Kelley had the capacity to understand and appreciate his conduct and to be held responsible for his actions.

## Rule of Sevens

The Rule of Sevens, also known as the rule of capacity, embodies three presumptions: (1) a child under the age of seven has no capacity for negligence; (2) there is a rebuttable presumption that a child between the ages of seven and fourteen does not have the capacity for negligence; (3) there is a rebuttable presumption of capacity for negligence for a child between the ages of fourteen and twenty-one. **Cardwell v. Bechtol**, 724 S.W.2d 739, 744 (Tenn.1987).[1] In **John Doe, et al. v. Taori's Premium Pizza, LLC, et al.**, No. M1998–00992–COA–R9–CV, 2001 WL 327906 (Tenn. Ct. App. April 15, 2001), this Court explained:

> [W]e have determined that the mature minor rule and the Rule of Sevens adopted by the Tennessee Supreme Court in **Cardwell**

---

[1] The Legal Responsibility Act of 1971, codified at Tennessee Code Annotated Section 1–3–113, lowered Tennessee's age of majority from twenty-one to eighteen; thus, for children between the ages of fourteen and eighteen, there is a rebuttable presumption of capacity for negligence. **John Doe, et al. v. Mama Taori's Premium Pizza, LLC, et al.**, No. M1998–00992–COA–R9–CV, 2001 WL 327906, at *5 (Tenn. Ct. App. April 15, 2001).

*v. Bechtol* presumptively governs issues in civil cases involving the capacity of minors to consent. Therefore, when an issue regarding the capacity or competency of a minor to consent arises in a civil case, the trier of fact must look to the totality of the circumstances, including the minor's age, ability, experience, education, training, degree of maturity and judgment, and the minor's conduct and demeanor to ascertain whether the minor was able to fully understand and appreciate the risks and probable consequences of the conduct. Following the Rule of Sevens, children under the age of seven lack capacity. Children between the ages of seven and fourteen are presumed to lack capacity, but the presumption can be rebutted. Finally, children between the ages of fifteen and eighteen are presumed to have capacity, but the presumption may also be rebutted.

*Id*. at *6. Under this definition, the Rule of Sevens is normally applied only where a child's capacity to consent is at issue. Here, Mr. Kelley contends that the trial court erred in applying the Rule of Sevens to find that should be held responsible for his flight from the group home. As set out in 47 Am. Jur. 2d <u>Juvenile Courts</u> § 59 (2012):

Once a delinquency finding is made, the juvenile court has an obligation to fashion a program of care, protection, and rehabilitation of the child. For federal and state constitutional substantive due-process purposes, the court may impose whatever treatment plan it concludes is most likely to be effective for a particular delinquent child, as long as that plan does not pose a significant threat to the health or well-being of the child. While the court must focus on the offender and may consider the gravity of the offense, **the court is not required to focus on the nature of the offense except as mandated by statute and may also consider the minor's age and previous delinquent history**.

*Id*. (footnotes omitted) (emphasis added).

In the instant case, Mr. Kelley does not appeal the finding of delinquency; rather, as discussed above, he appeals the dismissal of his appeal to the circuit court under the fugitive disentitlement doctrine. While the question of his capacity may bear upon the initial finding of delinquency, once that determination is made, the juvenile court stands *in loco parentis* and may fashion the punishment to fit the proverbial crime. Tenn. Code Ann. §37-1-101

-11-

(stating that the juvenile court has the authority to "[p]rovide for the care, protection, and wholesome moral, mental and physical development of children coming within its [jurisdiction]"). As noted above, in fashioning a plan for this purpose, the court may consider the child's age and previous history with the court. Here, it appears that the trial court did, in fact, consider both of these factors in reaching its conclusion that Mr. Kelley should be held responsible for his actions. Even if we assume, *arguendo*, that the trial court's application of the Rule of Sevens was incorrect, given that Mr. Kelley's capacity was not the dispositive issue here, we nonetheless conclude that the application of that doctrine was harmless error. Regardless of the Rule of Sevens, the undisputed evidence in this record shows that, at the time he absconded from DCS custody, Mr. Kelley was fifteen years, five months old. Even without the rebuttable presumption of capacity, there is no evidence in this record that Mr. Kelley did not appreciate his action in running away from the group home. Moreover, his history of delinquency, and the numerous offenses supporting that finding, do not preponderate against the trial court's finding that he was capable of understanding his actions and that he should, consequently, bear the consequences thereof.

For the foregoing reasons, the order of the circuit court is affirmed. The case is remanded for all further proceedings as may be necessary and are consistent with this opinion. Because Mr. Kelly is a juvenile, costs of this appeal are assessed against the State of Tennessee for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE