United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 30, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-11129

JOSHUA LUKE BAGWELL,

      Petitioner - Appellant,

                    versus

DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and WIENER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Joshua Bagwell appeals the district court's dismissal of his habeas petition under the fugitive disentitlement doctrine. We conclude that the doctrine is applicable in a federal habeas proceeding, but vacate the district court's dismissal of his petition and remand for further proceedings.

I

In 1988, Joshua Bagwell was convicted of capital murder and conspiracy to commit capital murder and sentenced to life in prison. His conviction was affirmed on direct appeal, and the state courts denied his petition for habeas relief. Bagwell

subsequently filed his habeas petition in federal district court, raising claims of ineffective assistance of counsel and insufficiency of evidence. While his petition was pending, however, Bagwell escaped from custody with three other inmates. He eluded authorities for ten days before surrendering to police following a six-hour hostage standoff at a convenience store.

While Bagwell was at large, the state moved to dismiss his habeas petition under the fugitive disentitlement doctrine. Bagwell surrendered before the court ruled on the state's motion, but the state urged the court to grant the motion nonetheless, noting that a fugitive's return to custody does not preclude a court from dismissing a direct appeal under the fugitive disentitlement doctrine. The court eventually agreed, dismissing his petition on September 20, 2002, over seven months after Bagwell was recaptured. The district court then denied Bagwell's request for a certificate of appealability.

Shortly thereafter, Bagwell sought a COA from this court on the procedural dismissal of his habeas petition. In his motion, however, Bagwell failed to indicate what constitutional claims he brought in his habeas petition. We granted Bagwell's request for a COA, but ordered briefing on two issues: "(1) whether the fugitive disentitlement doctrine can or should be applied in the habeas corpus context in general and under the facts of this case in particular, and (2) whether a petitioner who seeks to challenge a procedural dismissal of his 28 U.S.C. § 2254 petition must state,

2

in his COA application to the appellate court, the constitutional claims he sought to raise in that petition or, if the constitutional claims are not stated in the appellate COA application, whether this court may look to the pleadings filed in the district court to determine if the proper 'showing' has been made under *Slack v. McDaniel* as to the merits of the constitutional claim."[1]

## II

The State first argues that Bagwell's petition must be dismissed because Bagwell failed to identify his underlying constitutional claims as required by 28 U.S.C. § 2253(c)(2)[2] and *Slack v. McDaniel*.[3] Bagwell, however, has since filed a motion seeking leave to amend his COA application, and the State offers no persuasive reason why this motion should be denied. His motion is GRANTED.

## III

Bagwell's primary argument is that the district court erred in dismissing his habeas petition under the fugitive disentitlement doctrine. He argues, first, that the doctrine cannot be used in a

---

[1] *See* Amended Order, *Bagwell v. Cockrell*, No. 02-11129 (May 23, 2003).

[2] Section 2253(c)(2) specifies that a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

[3] 529 U.S. 473 (2000).

3

§ 2254 proceeding because the habeas writ is of constitutional dimension. Second, even if the doctrine is available in the habeas context, he urges that the district court abused its discretion in this case by dismissing his petition seven months after he returned to custody.

A

The question whether the fugitive disentitlement doctrine may be used to dismiss a habeas petition is one of first impression in this circuit.

In general, the fugitive disentitlement doctrine limits a criminal defendant's access to the judicial system whose authority he evades. The Supreme Court first recognized the doctrine over 100 years ago,[4] and the doctrine has since been used by both district and appellate courts to enter judgment against a fugitive defendant or to dismiss the defendant's appeal.[5] This power stems not from any statute, but rather from a court's inherent power "to protect [its] proceedings and judgments in the course of discharging [its] traditional responsibilities."[6]

---

[4] *Smith v. United States*, 94 U.S. 97, 97 (1876) ("It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render.").

[5] *See, e.g., Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998) (citing *Prevot v. Prevot*, 59 F.3d 556, 564-65 (6th Cir. 1995)).

[6] *Degen v. United States*, 517 U.S. 820, 823 (1996); *see also United States v. Delagarza-Villarreal*, 141 F.3d 133, 136 (5th Cir.

4

The Supreme Court has recognized a number of different rationales justifying the use of the doctrine. First, if a defendant is a fugitive when the court considers his case, it may be impossible for the court to enforce any judgment that it renders.[7] Second, courts have advanced a waiver or abandonment theory: by fleeing custody, the defendant is thought to have waived or abandoned his right to an appeal.[8] Third, allowing a court to dismiss a fugitive's case is thought to "'discourage[] the felony of escape and encourage[] voluntary surrenders.'"[9] Fourth, because a litigant's escape impedes the ability of a court to adjudicate the proceedings before it, dismissal of the case furthers the court's "interest in efficient practice."[10] Finally, the criminal defendant's escape is thought to represent an affront to the dignity and authority of the court. As the Court wrote over one hundred years ago, the defendant's escape is—-

> practically a declaration of the terms upon which he is willing to surrender, and a contempt of its authority, to which no court

---

1997) (recognizing the courts' "authority to fashion procedural rules governing the management of litigation before them").

[7] *See Degen,* 517 U.S. at 824; *Smith*, 94 U.S. at 97; *Bohanan v. Nebraska,* 125 U.S. 692 (1887); *United States v. Shelton*, 482 F.2d 848, 849 (5th Cir. 1973) (per curiam).

[8] *Ortega-Rodriguez v. United States*, 507 U.S. 234, 240 (1993).

[9] *Id.* at 241 (quoting *Estelle v. Dorrough*, 420 U.S. 534, 537 (1975)).

[10] *Ortega-Rodriguez*, 507 U.S. at 242; *Loyd v. State*, 19 Tex. Ct. App. 137, 155 (1885).

5

is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escape convict should be permitted to appear and prosecute his writ, than that the latter should dictate the terms upon which he will consent to surrender himself to its custody.[11]

Bagwell accepts that courts have the authority to dismiss the direct appeal of a prisoner who escapes custody. However, he urges that the doctrine cannot be used to dismiss a habeas petition because the writ of habeas corpus is "constitutionally based." To this end, he points to the Suspension Clause, which provides that the "Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."[12]

We are not persuaded. First, Bagwell cites no cases, statutes, or other authority to support his argument that dismissing a habeas petition works an unconstitutional "suspension" of the right. Moreover, it is well established that the habeas writ is not an absolute right under the Constitution; numerous statutes have limited prisoners' access to habeas relief without running afoul of the Suspension Clause.[13]

---

[11] *Allen v. Georgia*, 166 U.S. 138, 141 (1897).

[12] U.S. CONST. art. I, § 9, cl.2.

[13] *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) ("The added restrictions which the [AEDPA] places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a 'suspension' of the writ contrary to Article I, § 9."). The COA requirement, the exhaustion requirement, and the limitation on successive habeas petitions are

6

Court procedural rules, moreover, routinely act to deny habeas relief, and habeas courts have often pointed to a defendant's escape from custody during the state criminal proceedings to justify denial of habeas relief.  It is well established that a federal court may not review a prisoner's federal constitutional claims in habeas when the prisoner failed to satisfy a state procedural requirement that would serve as an independent and adequate state ground to support the conviction.[14]  When a convicted state prisoner flees from custody, the state appeals court may dismiss his appeal under the fugitive disentitlement doctrine, and numerous federal courts have held that any such dismissal bars federal habeas review.[15]  The district court's use of the doctrine in this case is not substantively different.

---

just a few examples of the statutory restrictions placed on a prisoner's access to habeas.  It cannot be disputed that these limitations are far more restrictive than the fugitive disentitlement doctrine, which cannot be invoked unless a prisoner escapes from custody.

[14] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

[15] *See, e.g., Wood v. Hall*, 130 F.3d 373, 378 (9th Cir. 1997) (" We conclude that Oregon's fugitive disentitlement rule was clear, consistently applied, and well-established at the time Wood fled from the state. Thus, it constitutes an independent and adequate state ground  sufficient to support a finding of procedural default.");  *Schleeper v. Groose*, 36 F.3d 735, 736-37 (8th Cir. 1994); *Feigley v. Fulcomer*, 833 F.2d 29, 30-31 (3d Cir. 1987);  *Potter v. Davis*, 519 F. Supp. 621, 621-23 (E.D. Tenn. 1981) (barring habeas review because state criminal appeal validly dismissed for fugitivity under state law), *aff'd*, 701 F.2d 180 (6th Cir. 1982) (table).

7

Moreover, several federal courts have invoked the fugitive disentitlement doctrine to dismiss habeas petitions. In *Lopez v. Malley*, for example, the Tenth Circuit considered whether it could dismiss the defendant's habeas petition because the defendant escaped from custody shortly after appealing the district court's decision.[16] The court noted that the fugitive disentitlement doctrine had historically been applied in direct criminal appeals but found that it could draw no relevant distinction between appeals in habeas corpus cases and direct criminal appeals: "The reasons for dismissing the appeal of an escaped prisoner are equally applicable to both."[17] Since the defendant was not in custody and any grant or denial of habeas relief would effectively be moot, the court dismissed the habeas petition. Numerous other courts have reached the same conclusion.[18]

---

[16] 552 F.2d 682 (10th Cir. 1977).

[17] *Id.* at 683.

[18] *See, e.g., Arana v. United States Immigration & Nat. Serv.*, 673 F.2d 75 (3d Cir. 1982); *Gonzales v. Stover*, 575 F.2d 827 (10th Cir. 1978); *Bailey v. U.S. Commanding Officer of the Office of Provost Marshal, U.S. Army*, 496 F.2d 324, 326 (1st Cir. 1974) (refusing to sanction the petitioner's "Janus-like conduct in seeking to invoke the processes of the law while flouting them"); Johnson v. Laird, 432 F.2d 77 (9th Cir. 1970) (district court dismissed petition for habeas corpus, litigant went AWOL pending his appeal, appeal dismissed); *United States v. Collins*, 651 F.Supp. 1177 (S.D. Fla. 1987); *Clark v. Dalsheim*, 663 F.Supp. 1095 (S.D. N.Y. 1987); *Lewis v. Delaware State Hospital*, 490 F.Supp. 177 (D. Del. 1980); *Crawford v. Varner*, 2002 WL 229898 (D. Del. 2002) (unpublished).

Finally, the justifications underlying the fugitive disentitlement doctrine apply in full in the habeas context, at least in appropriate circumstances. A federal habeas court cannot enforce its judgment if the prisoner is a fugitive. Similarly, a prisoner who absconds while his petition is pending intentionally waives his control over the proceedings. And a prisoner's escape is no less an affront to the dignity of a federal court sitting in habeas than it is to a court reviewing a direct appeal.

We conclude that the fugitive disentitlement doctrine may be applied in the habeas context.

B

It remains to be seen, however, whether the district court acted properly in applying the doctrine in this case. The fugitive disentitlement doctrine is an equitable doctrine that a court exercises in its discretion.[19] Accordingly, we review a district court's application of the doctrine for abuse of discretion.[20]

Bagwell urges that the district court erred by applying the fugitive disentitlement doctrine on the facts of this case. He

---

[19] *Ortega-Rodriguez*, 507 U.S. at 250 n.23 ("[D]ismissal of fugitive appeals is always discretionary, in the sense that fugitivity does not 'strip the case of its character as an adjudicable case or controversy.'" (quoting *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970))).

[20] *See, e.g., Bano v. Union Carbide Corp.*, 273 F.3d 120, 125 (2d Cir. 2001); *Barnett v. Young Men's Christian Ass'n, Inc.*, 268 F.3d 614, 617 (8th Cir. 2001); *F.D.I.C. v. Pharaon*, 178 F.3d 1159, 1162 (11th Cir. 1999).

notes that his § 2254 petition was pending in the district court for eleven months before he escaped from prison and that he was out of custody for only ten days. The court invoked the doctrine and dismissed his complaint over seven months after he surrendered to the police. Under these circumstances, Bagwell contends that the district court's decision to dismiss his petition represented an abuse of its discretion. In response, the State notes that many courts have applied the doctrine after a prisoner's recapture and that the district court's decision to follow suit was a valid exercise of its inherent authority.

Although the decision to dismiss lies within the discretion of the district court, the doctrine must be applied in accordance with its underlying justifications. In *Ortega-Rodriguez v. United States*, the Court rejected the use of the doctrine by the Eleventh Circuit against a defendant who had escaped during the district court proceedings but was in custody during the appeal. The Court emphasized that none of the doctrine's underlying justifications supported the Eleventh Circuit's decision: there was no risk that the appellate court's judgment would be rendered unenforceable; the "efficient operation" of the appeal was not interrupted by the prisoner's disappearance during the district court proceedings; and the prisoner's escape did not affront the dignity of the appellate court. The Court concluded that there must be some nexus between

the prisoner's fugitive status and the appeal before the disentitlement doctrine may properly be invoked.

In *Degen v. United States*, the Supreme Court reinforced this approach by holding that the disentitlement doctrine does not allow "a court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution."[21]  In deciding that the doctrine could not be used, the Court again focused on the commonly articulated justifications for the doctrine: 1) the risk of delay or frustration in determining the merits of the claim; 2) the unenforceability of the judgment; 3) the compromising of a criminal case by the use of civil discovery mechanisms; 4) the indignity visited on the court; and 5) deterrence.[22]  After examining whether these justifications applied to a civil forfeiture suit, the Court concluded that dismissal based on disentitlement was inappropriate.

In this case, the district court did not address whether the doctrine's underlying justifications support dismissal on the facts of this case.  In its brief order, the court offered no substantive explanation for its decision, save its observation that "[e]ven where the fugitive is captured during the pendency of his appeal, dismissal of the case remains as an acceptable sanction."  While this may be true, it does not necessarily follow that the court

---

[21] 517 U.S. 820, 823-24 (1996).

[22] *Id.* at 825-28.

11

should have applied the doctrine on these facts. We have specified that a fugitive's recapture is only "a factor to be considered in determining whether [a court] should exercise [its] discretion to dismiss the appeal."[23] The doctrine, ultimately, must be analyzed in accord with its justifying principles.

The brevity of the district court's order makes it difficult for us to discharge our duty to determine whether the dismissal was a proper exercise of discretion. We therefore vacate the dismissal of the petition and remand the case to the district court to consider its application of the fugitive disentitlement doctrine in light of the doctrine's historical justifications and the unique facts of this case.

We recognize that these traditional factors may apply differently in the habeas context. However, because dismissal of a habeas petition is an extreme sanction, the court must engage the facts of the case and weigh the articulated factors to ensure that dismissal is proper. In particular, the court on remand should evaluate whether Bagwell's escape significantly interfered with the court's consideration of his claims and whether the government demonstrated sufficient prejudice as a result of his absence.

VACATED and REMANDED.

---

[23] *United States v. DeValle*, 894 F.2d 133, 136 n.1 (5th Cir. 1990).