**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2011

No. 10-60300

Lyle W. Cayce
Clerk

IKE ROMANUS BRIGHT,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Ike Romanus Bright failed to surrender after he was ordered removed from the United States. The Board of Immigration Appeals denied Bright's motion to reopen his removal proceedings, and it also denied reconsideration. We DISMISS.

FACTUAL AND PROCEDURAL HISTORY

Ike Romanus Bright, a native and citizen of Nigeria, became a lawful permanent resident of the United States in November 1985. Nearly a year later, he pled guilty in Texas state court to attempted second-degree murder.

No. 10-60300

On March 21, 2007, the United States Department of Homeland Security ("DHS") issued a notice to appear charging that Bright was subject to removal pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("the Act"), because of his prior conviction, 8 U.S.C. § 1227(a)(2)(A)(iii).  Bright was released from DHS custody on a $2,000 bond.

At his initial hearing before the Immigration Judge ("IJ"), Bright admitted the factual allegations contained in the notice to appear and conceded he was removable as charged, but sought relief pursuant to former Section 212(c) of the Act.  The IJ rejected Bright's arguments and ordered him removed to Nigeria. The Board of Immigration Appeals ("BIA") agreed and dismissed Bright's appeal on December 23, 2008.  Bright did not file a petition for review.

On January 12, 2009, DHS ordered Bright's attorney to surrender him for removal on February 12.  When Bright failed to appear, DHS issued a notice declaring that his bond had been breached and forfeited, and a warrant was issued for his arrest.

On March 9, Bright filed a motion to reopen removal proceedings and a request to stay the removal order.  DHS argued, in part, that Bright did not merit a favorable exercise of discretion because he failed to surrender for removal and was a fugitive.  Bright replied, in part, that his failure to report for removal did not render him a fugitive because he had maintained the same address throughout his removal proceedings, his address was known to DHS, and he made no attempt to evade the authorities.

On September 4, the BIA denied Bright's motion to reopen and his request to stay the removal order, determining that, pursuant to the fugitive disentitlement doctrine, Bright's failure to report for removal rendered him

No. 10-60300

ineligible for consideration of additional relief.  Bright subsequently filed a motion for reconsideration.  The BIA denied Bright's motion for reconsideration on March 24, 2010.  Bright filed a timely petition for review.

## DISCUSSION

Bright does not dispute that DHS ordered him to surrender for removal on February 12, 2009, that he received notice of that order through his counsel of record, or that, to date, he has failed to report as ordered.  The issue before us is whether Bright is a fugitive under the fugitive disentitlement doctrine, barring our review of the BIA's decision.[1]  *See Giri v. Keisler*, 507 F.3d 833, 835 (5th Cir. 2007).  Because this is a question of law, we review it *de novo*. *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006).

"[T]he fugitive disentitlement doctrine limits a criminal defendant's access to the judicial system whose authority he evades." *Bagwell v. Dretke*, 376 F.3d 408, 410 (5th Cir. 2004).  We have extended the fugitive disentitlement doctrine to the immigration context, holding that the doctrine prevented further review of a BIA decision where the petitioners became fugitives after evading custody and failing to comply with a removal order.  *Giri*, 507 F.3d at 835.  The doctrine is an equitable one "that a court exercises in its discretion." *Bagwell*, 376 F.3d at 413 (citation omitted).

---

[1] We note that Bright did not file a timely petition for review of the BIA's September 4, 2009, denial of his motion to reopen.  *See* 8 U.S.C. § 1252(b)(1).  To the extent he seeks to challenge that decision, this court lacks jurisdiction to review those claims.  *See Stone v. INS*, 514 U.S. 386, 405-06 (1995).  Moreover, Bright has abandoned his challenge to the BIA's denial of his second motion to reopen, because his opening and reply briefs do not address that issue. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

No. 10-60300

The doctrine is justified by several rationales, including: (1) the difficulty of enforcing a judgment against a fugitive; (2) a waiver or abandonment theory, where "by fleeing custody, the defendant is thought to have waived or abandoned his right to an appeal"; (3) the "discourage[ment of] the felony of escape and encourage[ment of] voluntary surrenders"; (4) the furtherance of "the court's interest in efficient practice" "because a litigant's escape impedes the ability of a court to adjudicate the proceedings before it"; and (5) a response to the fugitive's "affront to the dignity and authority of the court." *Id.* at 411 (quotation marks, brackets, and citations omitted).

There is a split among the circuit courts on whether an alien is a fugitive where, as here, he has maintained the same address throughout his removal proceedings, the address was known to DHS, and DHS made no attempt to locate or arrest the alien following his failure to report for removal. The Second and Seventh Circuits have applied the fugitive disentitlement doctrine in this context, reasoning that even when an alien's location is known, immigration officials "must deploy resources to bring him in. And, of course, he may not be so easy to find once his litigation options are exhausted." *Gao v. Gonzales*, 481 F.3d 173, 176 (2d Cir. 2007) (quotation marks and citation omitted); *Sapoundjiev v. Ashcroft*, 376 F.3d 727, 729 (7th Cir. 2004). The Ninth Circuit, on the other hand, has held that an alien's failure to report for removal did not make her a fugitive during the pendency of her petition for review because her whereabouts were known to her counsel, DHS, and the court. *Sun v. Mukasey*, 555 F.3d 802, 805 (9th Cir. 2009).[2]

---

[2] In non-precedential opinions, panels of the Third, Eighth, and Eleventh Circuits have indicated a willingness to limit the doctrine to aliens who are hiding or otherwise not locatable. *See Ye v. Attorney Gen. of the United States*, 383 F. App'x 113, 116 (3d Cir. 2010)

4

No. 10-60300

We are persuaded by the Second and Seventh Circuits, especially in light of the purposes underlying the fugitive disentitlement doctrine. *See Giri*, 507 F.3d at 835. Applying the fugitive disentitlement doctrine to those who evade removal despite their address being known by DHS will encourage voluntary surrenders, the efficient operation of the courts, and respect for the judiciary and the rule of law. *See id.*

> Everyone understands that the government is overwhelmed with petitioners and procedures, and that it heavily relies on the word and voluntary compliance of numerous aliens within our borders. It is easy to game this system, but we should not treat disregard of government directives as a norm.

*Gao*, 481 F.3d at 176 (quotation marks, brackets, ellipses, and citation omitted).

Bright became a fugitive when he did not surrender for removal on February 12, 2009, despite that his address was known to authorities. In accordance with the fugitive disentitlement doctrine, we are barred from further review of Bright's petition. *See Giri*, 507 F.3d at 836.

Bright's petition for review is DISMISSED.

---

(unpublished); *Nnebedum v. Gonzales*, 205 F. App'x 479, 480-81 (8th Cir. 2006) (unpublished); *Zhou v. U.S. Attorney Gen.*, 290 F. App'x 278, 281 (11th Cir. 2008) (unpublished).