# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00837-COA

**GREGORY GILLEN** **APPELLANT**

**v.**

**TAMMY GILLEN** **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/2021 |
| TRIAL JUDGE: | HON. LAWRENCE PRIMEAUX |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW ALLEN BALDRIDGE |
| ATTORNEYS FOR APPELLEE: | JOHN S. GRANT IV |
| | JOHN S. GRANT III |
| | BROOKE TRUSTY GRANT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | APPEAL DISMISSED - 08/08/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. Tammy and Gregory Gillen (Greg) were married for fifteen years. Greg was an employee of his wife's business, J & J Tire & Muffler Inc. (J&J), and had check-signing authority. In August 2018, Greg wrote two checks to himself from the J&J checking account, totaling $350,000, and he deposited those checks into the couple's joint savings account. Greg then wired $1,075,000 to his father Kieth Gillen, moved to Missouri the next day without Tammy's knowledge, and never returned to the marital residence.

¶2. Tammy filed a complaint for divorce in which she requested a temporary restraining order that the wired funds be returned. She also filed a motion for other temporary relief,

requesting that Greg be enjoined from dissipating marital assets. A hearing was held in April 2019. After Greg revealed to the chancellor that he had approximately $800,000 in cash stashed in an undisclosed location, the chancellor peremptorily issued a temporary order requiring Greg to deposit $1,000,000 into the court's registry or face financial penalties.

¶3.   After Greg failed to deposit any funds, Tammy filed a contempt motion. The chancellor subsequently found Greg in civil and criminal contempt for failing to comply with the court's order. Greg filed a motion for reconsideration or, alternatively, to amend the judgment, as well as an emergency motion to set aside the temporary order and contempt order, which the chancellor denied. Greg appeals, alleging various claims of error related to the chancellor's temporary order and contempt order.

¶4.   In his brief, Greg raises issues of subject matter jurisdiction and personal jurisdiction (related to a Rule 81 summons).[1] He also claims that the contempt order violated his constitutional right against illegal incarceration and excessive fines and that the court erred in denying his emergency motion to set aside the orders.

¶5.   Because Greg has absented himself from the chancery court's jurisdiction to avoid incarceration for contempt, we dismiss Greg's appeal under the "fugitive dismissal rule." Alternatively, we would find Greg's claims are waived or without merit.

## FACTS AND PROCEDURAL HISTORY

¶6.   Tammy has owned J&J for approximately thirty years. She married Greg in 2003. Greg was a J&J employee and signatory on the company's checking account. In late August

---

[1] M.R.C.P. 81.

2018, Greg transferred $500,000 from J&J's savings account to its checking account. He then wrote two checks to himself from the J&J checking account—one for $100,000 and one for $250,000—and he deposited those checks into the couple's joint personal savings account. On August 31, 2018, Greg wired $1,075,000 from his and Tammy's joint savings account to his father, Kieth, in Missouri. Greg abandoned the couple's marital residence on the following day and moved to Missouri.

¶7. On December 12, 2018, Tammy filed for a divorce from Greg based on habitual cruel and inhuman treatment, adultery, and irreconcilable differences. She named Kieth as a party to the suit. In the complaint, Tammy requested a temporary restraining order and a preliminary and permanent injunction against Greg and Kieth to prevent them from spending the wired funds. In addition, Tammy filed a separate motion for temporary relief requesting, in part, that the chancellor enjoin Greg from dissipating any marital property "and that any transfers or conveyances of marital assets by the Defendants within the last twelve months be declared null and void with the assets returned into the marital asset estate."

¶8. On March 31, 2019, Greg and Kieth were served with a Rule 4 summons[2] and a Rule 81 summons. The Rule 81 summons notified the defendants that the "Motion for Temporary Restraining Order and Preliminary and Permanent Injunction" would be heard on April 18, 2019. The hearing was held, however, on Tammy's motion for temporary relief. Both Greg and Kieth were present at this hearing. Attorney Stephen Wilson, representing Greg and Kieth, requested a continuance because he had been only recently hired. Wilson said that

---

[2] M.R.C.P. 4.

Greg "would have no issue as to an injunction against dissipating, gifting, disposing of any assets that is in his possession other than any reasonable living expenses." The attorney explained that he did not "want to tie [Greg's] assets up so he can't live" because Greg was unemployed. The chancellor found this argument "suspicious." Although Greg indicated that he was willing to post $500,000 in the chancery court's registry, Tammy's attorney was "not agreeable" to that offer, noting "[T]hat's an incredible amount of money for someone to live on over the next year or so." The chancellor overruled the motion for a continuance, and the hearing proceeded.

¶9.     When asked if Greg had wired him $1,075,000 in August 2018, Kieth replied, "I don't remember the exact amount, but it sounds right." Kieth admitted that he immediately transferred that money to Greg at Greg's behest. He noted that Greg currently lived in a home Kieth owned.

¶10.    Greg testified that he left Mississippi on the morning of September 1, 2018, without notifying Tammy. He admitted that he had transferred approximately $500,000 from the J&J savings account to the company's checking account. Greg also confessed to transferring $1,075,000 to his father from the joint personal account with Tammy, leaving only about $8,000 in that account. Greg then informed the chancellor that he had "somewhere in the neighborhood of" $700,000 to $800,000 in cash in an "undisclosed location." He said, "I'm afraid if I tell the exact location, people rob you, mug you, steal and take it." Concerned that these funds—"which may be marital funds subject to equitable distribution"—were not secure, the chancellor immediately ordered Greg to deposit $1,000,000 into the court's

4

registry by Monday, April 22, 2019. "[F]or every day" the money was not deposited, there would be a $1,000 fine payable to the chancery court. Greg's attorney, Wilson, argued that Greg did not have a million dollars, but the chancellor did not "believe it." Greg filed a motion for a new trial or amendment on the same day.

¶11.   Greg filed a petition for permission to appeal from an interlocutory order with the Mississippi Supreme Court on April 23, 2019; it was denied. Order, *Gillen v. Gillen*, 2019-M-00712-SCT (Miss. Aug. 13, 2019). Although Wilson filed the petition, J. Stewart Parrish entered a notice of appearance as an attorney for both Greg and Kieth the following day.[3] On behalf of Kieth, Parrish filed a motion to dismiss on April 25, 2019, asserting that he is not a party to the marriage and that the court had "no personal jurisdiction over him."

¶12.   Greg never deposited any funds into the court's registry; so Tammy filed a motion for contempt on May 29, 2019. A contempt hearing was scheduled for June 5, 2019, but the court entered an order on that date resetting the matter for July 24 due to Greg's pending petition for an interlocutory appeal. Parrish signed the order "for Kieth Gillen," but the order noted that neither Greg "nor [his] attorney [were] present."

¶13.   On July 10, 2019, Greg filed an answer to the complaint for divorce.[4] The July 24

---

[3] There is some overlap in the defendants' legal representation. Although Greg claims that "it is unclear whether Mr. Parrish was representing" both defendants or just Kieth, the court docket clearly indicates that on April 24, 2019, Parrish entered a notice of appearance "on behalf of GREGORY GILLEN, KIETH GILLEN." Furthermore, in a subsequent motion to withdraw, Parrish noted he was "Attorney for the Defendants/Counter-Plaintiffs, Greg Gillen and Kieth Gillen." This clarification is pertinent for the purposes of our analysis.

[4] The filing was prepared by Parrish on behalf of both defendants/counter-plaintiffs.

hearing was reset for August 21, 2019, again due to the pending petition for an interlocutory appeal. The chancery court's status order noted that Parrish was then representing Greg as his attorney. On August 21, 2019, the chancery court denied the defendants' April 22, 2019 motion for a new trial or amendment of judgment, a stay of judgment, and permission to appeal the judgment. On August 21, 2019, the court again reset the hearing on Tammy's motion for temporary relief and motion for contempt, as well as Kieth's motion to dismiss for October 22, 2019. Parrish signed the status order, which also noted that "co-counsel Stephen Wilson failed to appear."

¶14. Parrish filed a motion to withdraw as counsel on September 24, 2019. On October 22, the chancellor reset the motions hearing—this time for October 29. The order noted that the "defendants did not appear, called three times, the remaining counsel [Wilson] has filed a renewed motion to withdraw."[5]

¶15. Neither Greg nor Kieth appeared at the contempt hearing. There is also no indication that any counsel for the defendants made an appearance on their behalf. Because "the defendants ha[d] failed and neglected to deposit the ordered sum into the registry of the court," the chancellor entered an order finding Greg and Kieth in civil and criminal contempt. For the civil contempt, Greg and Kieth were ordered to be held in custody "until they purge themselves of contempt." For the criminal contempt, they were ordered to serve a thirty-day sentence concurrently with the civil contempt incarceration. The chancellor further granted Tammy a judgment for her attorney's fees. "[A]s a further sanction for contempt," the

---

[5] The court granted Wilson's motion to withdraw as counsel at the subsequent motions hearing.

6

chancellor also dismissed "all pleadings and motions filed by the defendants."

¶16.   On November 8, 2019, Leigh Ann Key entered an appearance as an attorney for Greg and Kieth.[6] Key filed a motion for a new trial under Mississippi Rule of Civil Procedure 59 or, alternatively, to set aside the judgment under Rule 60(b)(6).  The motion claimed Greg and Kieth were entitled to a new trial because their previous attorneys (Wilson and Parrish) had not advised them of the contempt hearing.  Key later filed motions to withdraw as Greg's and Kieth's attorney, which the court granted.[7] Between June 2020 and April 2021, nothing was filed in the case.  On April 16, 2021, Matthew Baldridge entered his appearance as Greg's attorney.  Baldridge filed a "Motion for Trial Setting Or In the Alternative Status Conference" on Greg's behalf on June 10, 2021.  The following day, Baldridge also filed a motion to set aside several of the chancery court's orders, including the contempt order.

¶17.   On July 1, 2021, the chancery court held a hearing on the November 2019 Rule 59 motion and the June 11, 2021 motion to set aside the court's orders.  Neither Greg nor Kieth attended the hearing.[8] Attorney Baldridge explained that Greg did not attend the hearing because Greg feared incarceration.  The chancellor responded, "People who comply with [c]ourt [o]rders don't get incarcerated."  Acknowledging that Greg still had not deposited any money into the court's registry, Baldridge argued that Greg did not have the funds to deposit

---

[6] On October 16, 2019, the chancery court entered an order allowing J. Stewart Parrish to withdraw as counsel.

[7] Key had to withdraw due to health issues.

[8] Although Kieth was still named as a defendant at this time, Baldridge only represented Greg at the hearing.

into the registry. The chancellor, however, noted Greg's prior testimony "that he had eight hundred thousand dollars in his possession, which the Court found incredible, not because the Court didn't feel like he had the money, but because the Court felt that he was not giving . . . the straight answer on how much money he had." Had Greg deposited any amount of funds into the registry, then the chancellor "would have been favorably disposed to hear objections."

¶18. The court therefore denied the defendants' motions, finding them to be "frivolous and without merit." The court further held, "Due to their unclean hands and failure to demonstrate good faith compliance, the court finds that neither defendant is entitled to any relief whatsoever." On July 22, 2021, Greg filed a petition for an interlocutory appeal, asserting that the court erred in refusing to set aside the April 18, 2019 temporary order and the October 29, 2019 contempt order. The supreme court "deemed [Greg's petition] to be a notice of appeal."[9] On September 8, 2021, the supreme court appointed a special chancellor to preside over the proceedings due to the former chancellor's recusal.

## STANDARD OF REVIEW

¶19. Our Court's "standard of review of a chancellor's decision in domestic relation matters" is limited. *G.B.W. v. E.R.W.*, 9 So. 3d 1200, 1204 (¶8) (Miss. Ct. App. 2009) (citing *Engel v. Engel*, 920 So. 2d 505, 508 (¶10) (Miss. Ct. App. 2006)). We will reverse "only in cases where 'the chancellor abused his or her discretion, was manifestly in error, or applied an erroneous legal standard.'" *Id*. (citing *Engel*, 920 So. 2d at 508 (¶10)).

---

[9] Kieth has not appealed any of the court's rulings.

**DISCUSSION**

¶20.    Greg asserts various claims of error related to the chancellor's temporary order and contempt order.  However, before proceeding to Greg's claims, we must first discuss jurisdiction.  Even when parties fail to raise the issue of jurisdiction, "we must, when necessary, examine the record to determine the jurisdictional issue sua sponte."  *Magnolia Health Plan Inc. v. Miss. Cmty. Mental Health Comm'ns*, 334 So. 3d 42, 46 (¶14) (Miss. 2021) (citing *M.W.F. v. D.D.F.*, 926 So. 2d 897, 899 (¶4) (Miss. 2006)).  Greg has absented himself from Mississippi since the chancery court's ruling finding him in contempt—refusing (1) to attend hearings, (2) to submit himself to the chancery court's jurisdiction, and (3) to abide by the court's order.

¶21.    In *Weaver v. Parks*, 947 So. 2d 1009, 1012-14 (¶¶5-11) (Miss. Ct. App. 2006), this Court applied the criminal "fugitive dismissal rule"[10] to a child-custody matter in which the father had absconded with the child and had refused to submit himself to the trial court's jurisdiction.  We held in that case:

> Weaver has unmistakably ignored the orders of the chancellor in the proceedings below and even acknowledged this fact in his response to one of Parks's contempt petitions.  Weaver remains at large with Chloe, their whereabouts and Chloe's health status unknown.  Weaver's conduct to date

---

[10] *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993) (recognizing the well-settled rule "that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal"); *Bagwell v. Dretke*, 376 F.3d 408, 410 (5th Cir. 2004) (The fugitive dismissal rule, or "fugitive disentitlement doctrine[,] limits a [litigant's] access to the judicial system whose authority he evades." (internal quotation marks omitted)); *Hires v. State*, 882 So. 2d 225, 228 (¶6) (Miss. 2004) (noting that the "rationale behind the rule is that 'dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice'") (quoting *Ortega-Rodriquez*, 507 U.S. at 242).

leaves little doubt that he would not abide by an adverse ruling. Allowing Weaver to employ this Court's resources only if the outcome is favorable to him would be an affront to the dignity of this Court and would only encourage such behavior in the future. Simply stated, "we cannot permit Weaver to reap the benefits of a judicial system the orders of which he has continued to flaunt." *Pesin* [*v. Rodriquez*,] 244 F.3d [1250,] 1253 [(11th Cir. 2001)].

*Id*. at 1014-15 (¶13). We therefore "dismiss[ed] Weaver's appeal sua sponte." *Id*. at 1015 (¶14).

¶22. Since *Weaver*, the Mississippi Supreme Court also has applied the "fugitive dismissal rule" to an appeal from a custody case wherein the mother had absconded with two minor children. *D.C. v. D.C.*, 988 So. 2d 359, 361 (¶4) (Miss. 2008). In *D.C.*, the supreme court reasoned, "[W]e find it would not serve the best interest of the children if we were to allow the mother, who has demonstrated a recurring disregard for the orders of the Chancery Court of Clarke County, to proceed with her appeal." *Id*. at 363-64 (¶16).

¶23. Although this issue is not a custody matter, we find the fugitive dismissal rule equally applicable to the facts of this case. Greg, the appellant, absconded with over a million dollars in funds from a marital account. He has refused to comply with the chancery court's order to return the funds and to abide by the court's ruling finding him in contempt for failure to do so. As the chancellor noted at the motions hearing, "I think that two years ago [Greg] could have shown good faith and we could have moved this case forward with some even partial gesture of compliance, but instead he fled the jurisdiction. He has kept himself away." Further, Greg "has absented himself from this jurisdiction" and "has proven he will not" comply with the chancery court's orders. As the chancellor concluded in the July 1, 2021 order, Greg and Kieth "had the opportunity to defend by counsel, and could even have

appeared in person to protect their own interests, but both elected not to appear or otherwise participate." Accordingly, as in *Weaver*, we dismiss Greg's appeal sua sponte.

¶24.    Regardless, we would find Greg has waived his jurisdictional claims on appeal. Parrish, Greg's second attorney, signed the court's status conference order dated August 21, 2019, which explicitly stated, "[T]he Court ha[s] jurisdiction of the subject matter *and the parties*." (Emphasis added). Thus, through counsel, Greg stipulated that the chancery court had jurisdiction, and he has waived any objections on these grounds. *See Isom v. Jernigan*, 840 So. 2d 104, 107 (¶9) (Miss. 2003) (holding that once the appellant sent her attorney to make a general appearance before the chancery court, she "waived all objections" to an improper Rule 81 summons).

¶25.    We also would find no merit to Greg's claim that the court's finding of contempt violated his constitutional rights. Greg insists he was not provided with an opportunity to show a present inability to pay. The chancery court's July 2021 order precisely sums up why Greg's issue fails on the merits:

> [O]n October 29, 2019, the day of the contempt hearing, . . . [d]efendants had the opportunity to defend by counsel, and could even have appeared in person to protect their own interests, but both elected not to appear or otherwise participate. They contend in unsworn statements in their motions that they did not have notice of the contempt proceeding, but they were represented by counsel who did have notice. . . . [I]f the defendants, or either of them, felt jeopardized or under-represented . . . , neither took any timely action to ask the court for time to get other counsel, or for any other relief. The fact is that, after April 18, 2019, both defendants appeared only by counsel and then disappeared altogether until [the motion to set aside the order] was filed.
>
> Now, Gregory Gillen wants relief nearly two years after the fact. His attorney argues that he should be given the opportunity to show how he has spent the $800,000 down to around $50,000. To this court, that is a regrettably

11

laughable proposition. Had the money, or even most of it, been safeguarded, none of it would have been spent until the court could have dealt with it in equitable distribution.

Moreover, as Tammy rightly argues, the chancellor presented Greg with opportunities to appear and present evidence, but "[t]o this day, Greg still has not offered any evidence of inability to pay." *See Eades v. Eades*, 869 So. 2d 1038, 1039 (¶6) (Miss. Ct. App. 2003) ("The contemnor has the burden to prove his inability to pay and the showing must be made with specificity and not general terms.").

¶26. Greg's final issue—that the court erred in not granting his June 2021 emergency motion to set aside the order—would be procedurally barred on appeal. Greg cites no authority to support this claim nor is the emergency motion contained in the record. *See Rogers v. Est. of Pavlou*, 308 So. 3d 1284, 1289 (¶15) (Miss. 2021) (recognizing an appellant's "duty to ensure that the appellate record contains all matters necessary to his appeal, such as exhibits, witnesses' testimony, and so forth" (internal quotation marks omitted)).

¶27. Greg's appeal is dismissed for lack of jurisdiction. Alternatively, Greg's claims would be either waived or lack merit.

¶28. **APPEAL DISMISSED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**